200 So.2d 521 (1967)
Robert Dean DICKEY, Petitioner,
v.
CIRCUIT COURT, GADSDEN COUNTY, QUINCY, FLORIDA, Respondent.
No. 35418.
Supreme Court of Florida.
June 14, 1967.
*523 J. Klein Wigginton, of Parker, Foster & Madigan, Tallahassee, for petitioner.
Earl Faircloth, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for respondent.
O'CONNELL, Justice.
Petitioner is presently confined in the federal penitentiary at Leavenworth, Kansas. A detainer warrant bottomed on a charge of armed robbery has been issued by the officials of Gadsden County, Florida and filed in the office of the Sheriff of Leavenworth County, Kansas. In his petition in this court petitioner asks that we command the Circuit Court in and for Gadsden County either to initiate proceedings available to it to secure his return to that court for trial on the charge there pending or withdraw the detainer warrant filed against him.
We issued the alternative writ directed to Honorable Hugh M. Taylor, as judge of said court. Judge Taylor filed a return to which is attached copies of orders entered in December, 1962, April, 1963 and April, 1966. These orders denied petitioner the relief now sought in this proceeding. Thereafter the Attorney General, pursuant to F.S. Section 16.01, F.S.A., filed its brief in opposition to issuance of the peremptory writ. We then inquired of petitioner, who to this point had proceeded in proper person, if he wished this court to appoint counsel to represent him. On his request we appointed J. Klein Wigginton, Esq. of the Tallahassee Bar for this purpose. Mr. Wigginton has filed briefs and ably argued the petitioner's cause before us. His only compensation is the satisfaction gained in having aided in the proper administration of justice. We express our gratitude to Mr. Wigginton for his assistance in this cause.
In this cause we must determine four questions: (1) whether procedures are available through which the State of Florida, acting through its officers, can have petitioner returned to Gadsden County for a speedy trial; (2) whether petitioner has the right to demand the institution of these procedures; (3) whether mandamus is the appropriate method to be used to require that those procedures be instituted; and (4) whether the circuit court, i.e., the judge thereof, is the proper respondent.
The decision of the United States Supreme Court in Ponzi v. Fessenden, 1922, 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607, furnishes an affirmative answer to the first question. The court was there confronted with the certified question:
"May a prisoner, with the consent of the Attorney General, while serving a sentence imposed by a district court of the United States, be lawfully taken on a writ of habeas corpus, directed to the master of the House of Correction, who, as federal agent under a mittimus issued out of said District Court, has custody of such prisoner, into a state court, in the custody of said master and there put to trial upon indictments there pending against him?"
Answering this question in the affirmative, the court said,
"There is no express authority authorizing the transfer of a federal prisoner to a state court for such purposes. Yet we have no doubt that it exists and is to be exercised with the consent of the Attorney General. In that officer, the power and discretion to practice the comity in *524 such matters between the federal and state courts is vested."
The court brushed aside the objection that the state could not try a person who remained within the custody and jurisdiction of the United States, saying,
"This is a refinement which if entertained would merely obstruct justice. The prisoner when produced in the superior court in compliance with its writ is personally present. He has full opportunity to make his defense exactly as if he were brought before the court by its own officer. * * * The trial court is given all the jurisdiction needed to try and hear him by the consent of the United States, which only insists on his being kept safely from escape or from danger under the eye and control of its officer. This arrangement of comity between the two governments works in no way to the prejudice of the prisoner or of either sovereignty."
The procedure described in the Ponzi case subsequently became well established. People v. Nokes, 1938, 25 Cal. App.2d 259, 77 P.2d 243; United States ex rel. Strewl v. Warden of Clinton Prison, D.C.N.D.N.Y. 1937, 21 F. Supp. 502; United States ex rel. Moses v. Kipp, C.A. 7th 1956, 232 F.2d 147; Knowles v. Gladden, 1961, 227 Or. 408, 362 P.2d 763. Moreover, it operates with equal efficacy to make a state prisoner available for federal trial, United States v. Clinton, supra, and United States v. Kipp, supra, or for trial in another state. Pellegrini v. Wolfe, 1955, 225 Ark. 459, 283 So.2d 162. Indeed, on at least one occasion officials of the State of Florida honored such a request and produced a state prisoner for trial on a federal indictment. Harrell v. Shuttleworth, U.S.D.C.N.D.Florida 1951, 101 F. Supp. 408.
The second question  whether petitioner has the right to demand that the state undertake the procedures to return him for a speedy trial  is more difficult to answer. In Ponzi v. Fessenden, supra, and the other cited cases the sought for procedures were invoked against the wish of the accused, not at his instance. Since delays in criminal prosecution generally operate to the advantage of the accused and against the interest of the state, it is not surprising that most cases involving this question stem from prosecution efforts to obtain an accused for trial. Nevertheless, there is considerable logic as well as reliable precedent to support petitioner's position.
The basic issue here is obviously the right of the speedy trial guaranteed by our state and federal constitutions to one accused of crime. The state in its brief argues, in effect, that petitioner should not be heard to complain that he has not received a speedy trial on the Gadsden County charge because it is his criminal acts that led to his incarceration by the federal authorities which in turn prevent Florida giving him a speedy trial. In his order entered in December, 1962, denying petitioner the relief he seeks here, the respondent circuit judge gave as one of the reasons for his order that petitioner's "* * * absence from Florida and the delay in his trial is thus, in law, entirely voluntary on his part." This reasoning seems to say that a person incarcerated for one crime has no right to demand the constitutionally promised speedy trial and no right to complain against its denial. We do not agree.
Our statutes recognize the right of a person serving a sentence of imprisonment in this state to demand a speedy trial of other criminal charges pending against him in Florida courts. F.S. § 915.02, F.S.A. There is no logical basis for denying this same right to one who is detained in the prison of another sovereign, unless that circumstance in itself operates in some way to prevent the grant of a speedy trial. As shown above there are established procedures, use of which can make a prisoner held by either the federal or state government available to the other for trial. F.S. Sec. 941.05, F.S.A. provides procedures for obtaining for trial here a person being held *525 by a sister state. So incarceration by another sovereign does not in itself prevent the grant of a speedy trial on charges pending in Florida.
F.S. Chapter 915, F.S.A. which is designed to implement the right of speedy trial guaranteed by Section 11, Declaration of Rights, Florida Constitution, F.S.A., places on the accused the primary burden for bringing about a speedy trial. Yet it can hardly be said that the state has no obligation to perform this constitutional mandate. It is unnecessary that we attempt any definitive statement of the state's burden. It is sufficient to say that when an accused held by another sovereign makes demand for speedy trial in this state on charges forming the basis for a detainer warrant pending against him the state must initiate action to procure the presence of the accused for trial, unless the circumstances make it unreasonable for the state to do so. The question of reasonableness in each case requires consideration and balancing of interests of the accused and the state. It would seem that the principal factors would always be the cost and inconvenience to the state in following the procedures necessary to obtain the accused, transport him to Florida and return him to the holding sovereign as measured against the injury that the accused would suffer if trial in Florida were postponed until the expiration of sentence of the holding sovereign. If the term to be served elsewhere is relatively short it might well be that the injury to the accused would be relatively small and the state ought not be required to produce the accused until expiration of the term being served. But in all cases where the term being served has several years to run the denial of the important right of speedy trial for a period of years would outweigh the cost and inconvenience to the state. It must be remembered that as to charges not yet tried such an accused is innocent until proved guilty, and his rights relative to that charge are just as much entitled to protection as those of a citizen not incarcerated by another sovereign.
The use of the detainer warrant, which the Attorney General advises has no legal basis, has been the subject of judicial criticism. In the case of United States v. Candelaria, U.S.D.C.S.D.Calif. 1955, 131 F. Supp. 797, that court focussed its opinion on the problems created for a prisoner, as it affects his rehabilitation, by a detainer warrant lodged against him by another sovereign. The court quoted extensively from the "Handbook on Interstate Crime Control" which reflects the conclusions reached at the 1947 Meeting of Administrators of the Interstate Compact for the Supervision of Parolees and Probationers. That opinion forcibly demonstrates the injury that may be suffered by a prisoner by virtue of a detainer warrant based on charges pending in another jurisdiction. It supports our conclusion that if Florida files a detainer warrant, it has an obligation to act affirmatively to give the accused prisoner a speedy trial on such charges when requested to do so by the prisoner.
At least a few other jurisdictions have reached similar conclusions. In Lee v. State, 1932, 185 Ark. 253, 47 S.W.2d 11, the Supreme Court of Arkansas affirmed the denial of a motion for a discharge from certain state indictments under that state's two-term discharge statute by one who had been incarcerated during that two-term period in a federal penitentiary. The court held that the mere fact that the state had made no effort to extradite him for purpose of trying him and that he had, by reason of his confinement, been unable to appear voluntarily for trial did not warrant dismissing the indictments. However, the court clearly indicated that the outcome would have been different had movant made any request for such action on the part of the state.
The Arkansas court had an opportunity to apply this rule in the more recent case of Pellegrini v. Wolfe, 1955, 225 Ark. 459, 283 S.W.2d 162. That case arose on an original petition in the nature of mandamus by a prisoner in a Texas prison who was also under indictment in Arkansas to require *526 that he be discharged under the two-term discharge statute or, alternatively, that the state be required to institute extradition proceedings for the purpose of according him a speedy trial on the indictments. Following the Lee case, supra, the court refused to dismiss the indictments since the accused had not requested extradition during the two term period. However, the Arkansas court held that the instant motion did not constitute such a request and that he was entitled to the alternative relief sought. The following passage illustrates the practical operation of the procedure involved:
"Arkansas should request Texas to let Arkansas have Pellegrini for trial. If Texas refuses, then Arkansas has done all that is possible, and the two-year-discharge statute will not inure to the benefit of Pellegrini. If Texas requires, as a condition for granting such extradition, that Pellegrini execute some kind of waiver, then, unless Pellegrini will accomplish such waiver, he has not brought himself within the purview of the statutory provision relating to two-term-discharge. If Texas does agree to the extradition on conditions met, then Arkansas must extradite and try Pellegrini with due diligence or Pellegrini will be entitled to have the charges dismissed and the warrant/detainer cancelled."
Also see State ex rel. Short v. White, United States Marshal, 1928, 39 Okla. Cr. 242, 264 P. 647; People v. Piscitello, N.Y. 1960, 7 N.Y.2d 387, 198 N.Y.S.2d 273, 165 N.E.2d 849.
If we were to follow the Arkansas court's decisions in the Lee and Pellegrini cases we would have to hold that the petitioner Dickey is forever discharged from the Gadsden County charge of armed robbery. The petitioner on three previous occasions has, by petition lodged with the circuit court in that county, requested that he be brought back for trial on that charge. We will not in this case go as far as Arkansas would.
There is another aspect of the question before us that requires mention in a look to the future. It deserves consideration in the interest of the effective, just, and secure administration of criminal justice in this state. Having held that an accused has a right to demand and that Florida as the accusing state has an obligation to act affirmatively to utilize the procedures available to secure the presence for trial of the accused from a sovereignty holding him, it follows that failure of the accusing state to so act might well invalidate any judgment ultimately obtained on such charges if the time lapse is sufficiently great and is not excused. It was so held in Taylor v. United States, 1956, 99 U.S.App.D.C. 183, 238 F.2d 259 and People v. Bryarly, 1961, 23 Ill.2d 313, 178 N.E.2d 326.
In the Taylor case the appellant was imprisoned by the State of New York in 1950. In 1950 he had also violated a federal statute, but was not indicted therefor until 1954. Trial was not held until 1956 when the federal government secured his presence by a writ of habeas corpus ad prosequendum addressed to New York. After conviction the court of appeals reversed on the ground that appellant had been denied his right to a speedy trial, on the 1954 indictments, by the government's failure to earlier take the steps necessary to secure appellant's presence for trial.
In the Bryarly case, the accused was convicted in the state court in 1960 for an act committed in 1952. After his indictment in 1952, he left Illinois for Ohio and there committed a crime for which he was convicted and sentenced to prison in Ohio. Although the Illinois prosecuting officials knew in 1955 that Bryarly was in prison in Ohio they did not take steps to extradite him for trial in the 1952 indictment until 1960. Holding that this delay constituted a denial of the accused's right to a speedy trial the court said at p. 329, 178 N.E.2d 326:
"The constitutional guaranty of a speedy trial contemplates that the means *527 that are available to meet its requirements shall be utilized. Under the circumstances of this case we think that the burden of taking the steps necessary to bring about a prompt trial rested upon the People."
The Bryarly and Taylor cases were each decided on appellate review of judgments of conviction and not in an action seeking a speedy trial as in the case now before us. Nevertheless, they furnish strong support for petitioner's contention that he has a right to demand the state to initiate steps available to it to try him because both cases held the failure of the prosecution to act denied him a constitutional right. These cases are particularly strong support for petitioner since in neither had the accused requested trial, and Bryarly had wrongfully left Illinois after his indictment there.
To be considered also is the fact that the United States Supreme Court in the recent case of Klopfer v. North Carolina, 1967, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), has squarely held that the speedy trial guaranty of the Sixth Amendment to the federal constitution is applicable to the states through the Fourteenth Amendment. This means that hereafter, at least, speedy trial issues in state convictions will be measured by federal standards.
This discussion is intended to alert Florida officials charged with the administration of criminal justice to the necessity for diligent affirmative action in securing for trial on charges pending here persons incarcerated by other sovereignties. Failure to so act may well deny protection of the public interest in the effective prosecution of crime as well as the interest of those subject to prosecution for crime in circumstances such as found in this case. As noted above in most instances the lapse of time between the commission of a criminal act and trial of an accused therefor operates against the interest of the state which has the burden of proving the essential facts necessary to a conviction. This is so for many reasons. The clamor of the public for action, and the interest of the prosecution's witnesses and of prosecution officers themselves wanes with the passage of time as does the memory of witnesses to the crime. Therefore, if this state does in fact intend to try the Florida charges represented by a detainer warrant lodged against an accused who is held elsewhere the public interest in the successful enforcement of the criminal laws of the state dictates that the trial be had as quickly as it can be arranged. Too, if Florida does not intend to try the accused it still has a legitimate social concern in the accused's rehabilitation by the holding authority. The rehabilitation process is certainly hampered by the existence of a detainer warrant. For example the accused cannot be released on parole by the holding authority since he will then become subject to arrest in satisfaction of the detainer warrant. For this reason it seems to us that Florida has an obligation either to act to procure the accused's presence for trial or withdraw the detainer warrant in such cases.
We come then to the third question  whether mandamus is the proper remedy to accomplish that which is sought by petitioner in this cause. We hold it is.
Mandamus lies to require the performance of nondiscretionary official action. The action which the petition seeks here seems to us to be essentially nondiscretionary. The real discretion in the matter at hand was exercised when the state officials or agencies involved here decided that the petitioner ought to be charged with armed robbery and they lodged the detainer warrant against him. It is true that these same officials can exercise discretion and withdraw or dismiss the charges against the petitioner. But so long as the charges and the detainer warrant remain pending the obligation of the state to do what it can reasonably do to grant petitioner's request for a speedy trial cannot be held to be discretionary. We construe our constitution as requiring the state to employ all reasonable means available to it to grant the accused *528 the speedy trial, a right guaranteed by both our constitutions.
In the instant case the petitioner seeks to compel the circuit court, i.e., the judge of that court, to institute the proceedings he seeks. Whereas as we understand the procedure which must be followed it is in this case the State Attorney of the Second Judicial Circuit, or the Attorney General of this state, who must work out the necessary details with the Attorney General of the United States and then apply to the federal district court for a writ of habeas corpus ad prosequendum directed to the warden at Leavenworth. It is tempting to overlook this defect which may appear to be a mere technicality, but we cannot do so. On careful study we think the writ cannot be issued to the court, or the judge thereof, but only to the prosecuting officer. In two of the prior proceedings filed by petitioner and denied by the respondent judge, the state attorney was named as respondent. In this one, however, he named the circuit court as respondent. Because of this defect we must deny the peremptory writ and discharge the alternative writ heretofore issued.
For the benefit of those who may in the future file petitions in like causes we warn that the petition must name as respondent the prosecuting officer of the court in which the charge requested to be tried is pending. It must state by which sovereign he is held and where, the term or terms to be served in the holding sovereign's prison and the tentative expiration date of those terms. It must also state the nature of the charge pending against him in Florida, the county and court in which pending, the date filed, and the fact that a detainer warrant has been filed against him in the place where he is held. The petition must also allege that he has requested the prosecuting officer, and/or the court, to have initiated proceedings to return him for speedy trial of the charge against him, giving the date such demand was made, and that such demand has been denied or remains unanswered.
In the case now before us the petitioner did not allege all of the necessary facts, but on request of this court they were furnished by the Attorney General of this state. The information so furnished shows that on September 12, 1960 the petitioner was sentenced to three consecutive five year terms with tentative expiration date in January 1971.
The information furnished by the state shows that in addition to the detainer warrant filed for the Gadsden County charges, detainers have also been filed for charges pending in Calhoun County and another brought by the Florida Division of Corrections. It would be unreasonable to require Florida to bring petitioner back on three separate occasions for trial of the charges represented by the three detainers against him. It would seem logical therefore that if petitioner again demands return here for trial on the Gadsden County charges, the proper officials of this state ought, in any arrangements made with federal authorities, to make provision to try petitioner on all charges pending in this state before returning him to the federal prison.
In summary we here hold that one who is held in custody by another sovereign and who is also accused of a crime in this state, as a result of which a detainer warrant has been lodged against the accused, has the constitutional right to demand that Florida initiate the procedure available to it to secure the return of the accused here for a speedy trial. If the factual circumstances are such that it would be unreasonable to require Florida to secure the return of the accused prior to the expiration of the sentence imposed by the holding sovereign the Florida authorities will not be required to sooner secure the return of the accused for trial here. If the holding sovereign refuses to release the accused when requested to do so, or if the accused refuses to execute any waiver, consent or release required of him which are necessary to secure his return then Florida will have done all required of it under our constitution.
*529 For the reasons above expressed the alternative writ of mandamus is discharged without prejudice to petitioner's right to reassert his demands in a petition naming the proper prosecuting official as respondent.
It is so ordered.
THORNAL, C.J., and ROBERTS and ERVIN, JJ., concur.
DREW, J., concurs only in the judgment discharging the writ.
THOMAS and CALDWELL, JJ., dissent.