224 So.2d 769 (1969)
Madison Lee REYNOLDS, Appellant,
v.
STATE of Florida, Appellee.
No. 68-506.
District Court of Appeal of Florida. Second District.
July 2, 1969.
Robert E. Jagger, Public Defender, and Edwin I. Ford, Asst. Public Defender, Clearwater, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and Morton J. Hanlon, Asst. Atty. Gen., Lakeland, for appellee.
MANN, Judge.
A person who suffers a major upset over a minor grievance is admonished not to "make a federal case out of it." The advice is timely: we accept it and share it. We decline to make literally a federal case out of Reynolds' simple, though important, petition.
Some of the congestion of courts is judge-made, on advice of counsel. The Attorney General asks us to follow the decisions of the First District in Holstein v. State, Fla.App. 1967, 205 So.2d 6, and of the Third District in Hill v. State, Fla. App. 1966, 184 So.2d 457, and hold that Reynolds, imprisoned in Texas, is not "in custody under Sentence of a court established by the Laws of Florida claiming the right to be released" within the meaning of CrPR 1.850, 33 F.S.A.
Reynolds mailed three handwritten petitions to three Florida courts alleging that he was deprived of his Sixth Amendment right to counsel in the Florida courts, before Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. The records in these cases state that he appeared without counsel, although the State has not responded, as it rightfully may. Two of the petitions were dismissed without hearings in the trial courts. We think that the third was more appropriately handled. That one went to Judge Roy Amidon, able and experienced Judge of the Criminal Court of Record in Polk County, who immediately determined that Reynolds had not been given the rights secured by the *770 Sixth Amendment, as interpreted in Gideon, and granted the relief requested.[1]
The resolution of this case is simple. Reynolds alleges a clear constitutional right. CrPR 1.850 was promulgated for the specific purpose of allowing consideration of post-Gideon claims by the trial court which sentenced the petitioner, which makes sense. Roy v. Wainwright, Fla. 1963, 151 So.2d 825. Mr. Justice Thornal there explained that it "was promulgated to establish an effective procedure in the courts best equipped to adjudicate the rights of those originally tried in those courts. * * * The rule is intended to provide a complete and efficacious post-conviction remedy to correct convictions on any grounds which subject them to collateral attack." The Court in Roy denied habeas corpus without prejudice to the petitioner's seeking relief under the rule.
Since Roy, Rule One's purity of purpose has been lost and the courts have developed the practice of looking to see whether the rule gives the petitioner a right. This obscures the question. The question is whether the Constitution gives the petitioner a right. If it does, Rule 1.850 gives him a remedy. And this is so because as a matter of sound policy our Supreme Court, in promulgating the rule, thought it better to have issues relating to the vacation of sentence determined by the convicting jurisdiction rather than, by habeas corpus, in the confining jurisdiction. McNally v. Hill, 1934, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238, is the authority underlying the misconception. That was habeas corpus to test the validity of a sentence following consecutively upon an admittedly lawful one then being served. The Supreme Court of the United States suggested mandamus as a means of compelling parole consideration in the light of the allegedly void judgment underlying the detainer. After the trial courts' action in the cases now before us, McNally was expressly overruled in Peyton v. Rowe, 1968, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426. Peyton v. Rowe makes it obvious that the invalidity of a criminal judgment ought to be and may be determined as soon as possible. Rule 1.850 makes it possible to do so in state courts closest to the situation.
We hold that Reynolds is "in custody" under our Florida courts' detainers, "seeking release" from their restraint upon him in Texas. He alleges that maturity has set in, that he now regrets his former life and that the Florida detainers preclude consideration of probation. That is a matter we know nothing of. We do know that trial judges and probation officers are of necessity more favorably situated than are we in deciding such questions. It is obvious that Reynolds' detainer on Florida warrants may have a bearing on the question.
The drafting of a suitable rule presents difficulty whenever it covers specific situations. For example, the Standards Relating to Post-Conviction Remedies recommended by the Advisory Committee on Sentencing and Review of the American Bar Association Project on Minimum Standards for Criminal Justice, 1967, approved by the ABA House of Delegates, 1968, proposes that an appropriate rule grant a right to seek relief:
"(i) even though the applicant has not yet commenced service of the challenged sentence;
"(ii) even though the applicant has completely served the challenged sentence;
"(iii) even though the challenged sentence did not commit the applicant to prison, but was rather a fine, probation, or suspended sentence."
Suppose the petitioner had served part of a sentence and then escaped? That is the situation in a case now pending before this *771 court. If the proposed standard rule were in effect would some trial judge think such a petitioner excluded? We submit that the wording of the rule ought to be as simple as possible, to express without reservation the principle that post-conviction relief ought to be sought in the trial court in which the judgment was rendered and granted, in the interest of justice both to the petitioner and the State, as soon as practicable.[2]
We are embarrassed by the suggestion that Reynolds may exhaust his State remedies without gaining consideration of a right clearly declared under the Constitution of the United States. Were we to follow Holstein and Hill in spite of the overruling in Peyton v. Rowe, supra, of their underlying authority we would create no conflict under Article V, Section 4 of the Constitution of Florida, thus impelling Reynolds to seek federal habeas corpus. There are undoubtedly cases on the growing edge of the law in which the federal right is unclear and we understand the trial court's hesitancy in such cases. See, for example, Judge Warren Jones' opinion in McDonald v. Moore, 5th Cir.1965, 353 F.2d 106, extending Gideon  not illogically, but not inevitably, either  to offenses theretofore thought outside its scope.[3] But Reynolds' right has been crystal clear since 1963 and pending on these petitions since 1967. It is a reproach to our legal institutions to suggest, as the State does, that it is procedurally unreachable in the State courts. When the Constitution declares a right, it demands a remedy. CrPR 1.850 is as broad as its language permits or the Constitution requires it to be.
If we assist by affirmance in the exhaustion of Reynolds' state remedies federal habeas corpus will probably be entertained at expense to the taxpayers on all sides. We need not contribute to the burdens of the United States District Court for the Middle District of Florida or the Court of Appeals for the Fifth Circuit. If we deny this appeal Reynolds will properly seek habeas corpus. Should he seek it, as Ahrens v. Clark, 1948, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898, suggests, in Texas, the confining state? This is the view of the Third Circuit, for example, in United States ex rel. Van Scoten v. Pennsylvania, 1968, 404 F.2d 767. Or should he apply, his presence being unnecessary, where the facts can most conveniently be established, in the convicting district? This is the well reasoned view of Chief Judge Haynsworth, speaking for the Fourth Circuit in Word v. North Carolina, 1969, 406 F.2d 352. We need not charge the taxpayers on Reynolds' account for the study of this intriguing question.
We think that in adopting the rule our Supreme Court wisely intended to provide plenary authority to the convicting *772 court to review the constitutionality of judgments and sentences. Johnson v. State, 1966, 184 So.2d 161, on rehearing 185 So.2d 466, adumbrates a requirement that the petitioner be serving the sentence he is attacking, but this stems from the cases construing 28 U.S.C.A. § 2255 in the light of McNally. McNally underlies Holstein and Hill, and was presumably thought by the learned trial judge from whom this appeal is taken to be the law. We think its restrictive doctrine is no longer sustainable in the light of Peyton v. Rowe, although that case did not involve two states. There is a facet of the multijurisdictional problem which deserves mention, however. It has been assumed that the right to a speedy trial guaranteed by the Sixth Amendment did not require affirmative action to try one incarcerated in another jurisdiction. Our Supreme Court held otherwise in Dickey v. Circuit Court, Gadsden County, Fla. 1967, 200 So.2d 521, two years before the Supreme Court of the United States held affirmative action constitutionally compulsory. Smith v. Hooey, 1969, 393 U.S. 374, 89 S.Ct. 575, 2 L.Ed.2d 607. We do not understand that the right to a speedy trial applies with any less force to a new trial to which the petitioner may be entitled by virtue of the constitutional infirmity of his first one. From the standpoint of the State as well as the accused, retrial as soon as practicable is bound to be more efficient and less likely to require dismissal as prejudicial to the accused.
Any tug-of-war between Rule 1.850 and the Constitution of the United States is an unequal contest. We decline to add a temporary tug on the side of technicality. It would serve no useful purpose. It would result in needless expense to the State of Florida and injustice to Reynolds.
We have spoken critically of those petitioners who abuse their access to the courts. The law should operate swiftly and fairly to punish the guilty. We try so to conduct ourselves as judges as to inculcate respect for law by rendering justice free from artifice and undue technicality.
A free society is much like a bank. Each of a bank's depositors has a right to withdraw his funds at once. If many of them demand their rights simultaneously the bank will fail. But banks survive because of confidence. A depositor knows that if he has the money on deposit he may write a simple order to pay someone, paying due homage to the demands of electronic data processing, and that the order will be complied with promptly, courteously and without the slightest regard to the depositor's age, sex, race or region of origin. In a world in which the unquestioned compliance with principles of fundamental fairness is assumed by all, respect for the law will prevail. We do our part to hasten that day.
Reversed and remanded for further proceedings not inconsistent with this opinion.
HOBSON, C.J., and PIERCE, J., concur.
NOTES
[1] Judge Amidon's order recited that the Polk County sentence had been partially served and dismissed the charges. We express no opinion on the question, not now before us, of the proper determination of these petitions, but simply that they state a constitutional claim determinable under Rule 1.850.
[2] See Brown, Collateral Post Conviction Remedies in Florida, 20 U. of Fla.L.Rev. 306 (1969), which collects the cases and is in many ways a useful analysis, although in places the author treats Rule 1.850 as limiting the right as distinguished from affording a practical remedial procedure. See also Dora v. Cochran, Fla. 1962, 138 So.2d 508, and Mr. Justice Ervin's concurring opinion in Fretwell v. Wainwright, Fla. 1966, 185 So.2d 701. In the light of its decisions cited here, we do not take our Supreme Court to have approved, in Pritchett v. State, Fla. 1967, 198 So.2d 19, all of the reasoning underlying Pritchett's appeal, Fla.App. 1966, 193 So.2d 185, the Supreme Court having considered the matter independently on habeas corpus. See also Bator, Finality in Criminal Law and Federal Habeas Corpus for State Prisoners, 76 Harv.L.Rev. 441, 521 et seq. (1963); Wright and Sofaer, Federal Habeas Corpus for State Prisoners: The Allocation of Fact-finding Responsibility, 75 Yale L.J. 895 (1966); Note, State Criminal Procedure and Federal Habeas Corpus, 80 Harv.L. Rev. 422 (1966).
[3] Chief Judge John R. Brown's opinion in Boyer v. Orlando, 5th Cir.1968, 402 F.2d 966, demonstrates the problems encountered in a federal system in which constitutional rights are involved. The respect there shown for the prior right of state courts to deal with these issues ought to be reciprocated by assumption of our responsibility for determining them fully, fairly and promptly.