326 So.2d 83 (1976)
John Edward O'BRYAN, Appellant,
v.
STATE of Florida, Appellee.
No. Z-137.
District Court of Appeal of Florida, First District.
January 29, 1976.
*86 Richard W. Ervin, III, Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and Gerald R. Knight, Asst. Atty. Gen., for appellee.
SMITH, Judge.
The issue is whether the trial court erred in holding that O'Bryan was not denied a speedy trial. Rule 3.191(b)(3), R. Cr.P. Reserving the right to appeal on that issue, O'Bryan pleaded nolo contendere to a charge of escape committed in Escambia County on September 4, 1973.
Little more than a month after his excape, O'Bryan was convicted of petit larceny in Tennessee and was sentenced to confinement there for one to three years. While O'Bryan was so confined, an Escambia prosecutor filed an arrest warrant as a detainer with the Tennessee authorities in order to secure O'Bryan's eventual appearance, at the end of his Tennessee term, for trial on the Florida charge. On July 19, 1974, in a letter responding to an inquiry by O'Bryan's public defender counsel in Memphis, the Escambia prosecutor stated that Florida wished to try O'Bryan for escape, that arrangements could be made to return O'Bryan to Florida for trial within thirty days of his waiver of extradition and that:
"If Mr. O'Bryan wishes to waive extradition, please contact me and I will have the Sheriff of Escambia County transport Mr. O'Bryan back to the jurisdiction of this county."
The record reflects no further development for nearly three months. On October 11, 1974, O'Bryan filed a speedy trial motion with the clerk of the Escambia court. Again there was no activity. Then, on March 8, 1975, 148 days after O'Bryan's demand for speedy trial, he waived extradition by signing a form which was evidently supplied him by Tennessee authorities. On March 14, his Tennessee term having just expired, O'Bryan was transported to Escambia County by Florida authorities. On April 14, 185 days after the filing of the demand for speedy trial, O'Bryan's counsel filed a motion for discharge, which the court below denied. The plea of nolo contendere, the judgment, sentence and this appeal followed.
Rule 3.191(b)(3), R.Cr.P., and our Supreme Court's antecedent decision in Dickey v. Circuit Court, etc., 200 So.2d 521 (Fla. 1967),[1] provide the standard by which we judge this appeal. The Supreme Court promulgated Rule 3.191 as an emergency measure when the legislature enacted ch. 71-1(B), § 6, Fla.Laws, which codified the constitutional speedy trial guaranty and called for court rules by which speedy trials might be realized. Art. I, § 16, Fla. Const.; § 918.015, F.S. 1971; In re Florida Rules of Criminal Procedure, 245 So.2d 33, 35 (Fla. 1971). The Rule provides in part:
"... After the demand has been filed, such person is entitled to trial within [six months] ... commencing after the prosecuting attorney has filed a detainer or has otherwise attempted to secure the presence of the accused for trial or within a reasonable time as determined by the court if the prosecutor has not acted in response to the demand for trial... ."
Like many practical tests formulated to answer stubborn constitutional questions, Rule 3.191(b)(3) has ambiguities in application. The quoted segment of the Rule is, in its complexity, a garment woven of a single thread. Grasping either end of it, *87 we find ourselves bound to wind up the whole of it.
The period for speedy trial is made to commence on the concurrence of the foreign prisoner's demand for trial and the State's filing of a detainer warrant or other attempt "to secure the presence of the accused for trial."[2] In this, the Rule is entirely consistent with and is no doubt largely derived from Dickey, 200 So.2d at 525:
"... If Florida files a detainer warrant, it has an obligation to act affirmatively to give the accused prisoner a speedy trial on such charges when requested to do so by the prisoner."
Unaccountably, however, after giving such importance to the moment when both the State and the accused have formally signified a desire for a trial, the Rule seems to envision that the detainer will invariably be filed after and "in response to the demand for trial." The opposite sequence of detainer/demand, which occurred in Dickey and in this case, would seem more natural and therefore more frequent. Is it conceivable that our Supreme Court intended that the trial be had within six months certain from the filing of a detainer after and in response to a demand for trial, but only "within a reasonable time as determined by the court," or perhaps within some other period not mentioned by the Rule, when a detainer is filed before the foreign prisoner demands trial in Florida?
This ambiguity and others may be satisfactorily resolved, we believe, by reading Rule 3.191(b)(3) in light of Dickey, from which the Rule evidently derived words and phrases as well as concepts. Dickey makes it clear that the same consequences attach under the Florida and United States Constitutions regardless of the sequence of detainer and demand. There is no reason to attribute a different purpose to the Rule.
In this case, the filing of the detainer warrant preceded and no doubt precipitated the demand for speedy trial. When those two events occurred, they constituted a mutual commitment by the State and O'Bryan to try the case.[3] The Rule then operated to assure that the trial would be a speedy one.
After the detainer warrant was filed and before O'Bryan demanded a speedy trial, neither Constitution nor Rule required the State to move with the same diligence toward trial as is necessary when the accused is in the State's custody or otherwise under its restraint. The detainer warrant is not equivalent, for purposes of speedy trial considerations, to an arrest on indictment or information. State ex. rel. Williams v. Eastmoore, 297 So.2d 572 (Fla.App.1st, 1974); contra, Hargrove v. State, 281 So.2d 390 (Fla.App.2d, 1973), and State v. Sutton, 269 So.2d 712 (Fla.App.2d, 1972). The most pressing burden which a speedy trial alleviates is that *88 which results from pretrial incarceration. Barker v. Wingo, 407 U.S. 514, 532-33, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101, 118 (1972). To request another sovereign to make its prisoner available at the end of his sentence does not newly imprison the accused. Our Rule therefore does not extend speedy trial benefits to a foreign prisoner until he demands those benefits. Perez v. State, 283 So.2d 575, 576 (Fla.App. 4th, 1973), cert. den. 289 So.2d 739 (Fla. 1974).
A warrant filed as a detainer may nevertheless substantially prejudice a foreign prisoner by eliminating the possibility of his parole, reducing his privileges in custody, hampering his rehabilitation and increasing his sense of despair. Dickey, 200 So.2d at 527; Barker, 407 U.S. at 533, 93 S.Ct. at 2193, 33 L.Ed.2d at 118; ABA Standards Relating to the Administration of Criminal Justice, Compilation, p. 272 (1974). So, when a foreign prisoner responds to a detainer by demanding a speedy trial or when a Florida prosecutor responds to a trial demand by filing a detainer, Dickey and the Rule assure that the Florida trial will be had within six months, subject to the Rule's extension and waiver provisions. Rule 3.191(d)(2) and (3), (e), (f), R.Cr.P.
The need for a firm decision to prosecute an information to trial or not is less urgent when the accused is imprisoned by another sovereign than when the accused is in Florida under pretrial custody or restraint.[4] After a demand for speedy trial is made by a foreign prisoner, therefore, a Florida prosecutor may elect under the Rule to file no detainer and make no similar response which would commit the State to a six month trial deadline. The prosecutor may be influenced in his decision by such factors as the temporary unavailability of prosecution witnesses, the need for more investigation, the inconvenience and expense of sending for and returning a foreign prisoner before the end of his term and the low priority of the case among others on a crowded docket. See Dickey, 200 So.2d at 525. If the Florida prosecutor determines not to file a detainer warrant or otherwise respond to the demand, or if he does not seasonably decide whether and how he shall respond,[5]Dickey and the Rule will place the case among those to be tried, not within six months certain, but "within a reasonable time as determined by the court."
Such an election by the prosecutor may gain the State more than six months in which to try the accused, but it correspondingly shifts from the prisoner to the State the risk that critical defense witnesses may die, disappear or forget, that tangible evidence of innocence may be lost or that the accused may otherwise be prejudiced  all of which will bear heavily in the court's later determination[6] of whether *89 the State commenced the trial within a reasonable time. Dickey v. Florida, supra n. 1, 398 U.S. at 38, 90 S.Ct. at 1569, 26 L.Ed.2d at 32; Barker v. Wingo, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.
In the case before us, there being a concurrence of a detainer and a demand, O'Bryan was entitled to a trial within six months unless the time was extended by the court or O'Bryan deprived himself of the Rule's benefits. No extension order was timely sought by the State, so no extension occurred. Rule 3.191(d)(2), R.Cr. P.; Mullin v. State, 307 So.2d 829 (Fla.App.3d, 1975).
The significant evidence on the question of O'Bryan's self-deprivation of the Rule's benefits is that the Escambia prosecutor and the Memphis public defender, O'Bryan's counsel, discussed a speedy trial even before O'Bryan filed his demand. The prosecutor wrote a letter on July 19, 1974, expressing assurance that the State could and would bring O'Bryan to Florida for trial within thirty days after he waived extradition. O'Bryan was in fact brought to Florida promptly after he waived extradition on March 8, 1975. Counsel have submitted argument here on whether this evidence, without more, constitutes proof that O'Bryan refused to execute a waiver before March 8, 1975, thus disqualifying him from earlier benefits under the Rule.[7] We need not decide the difficult evidentiary question of whether O'Bryan earlier "refused" to sign a waiver, for subsections (b)(3) and (e) of the Rule require in broader terms that O'Bryan have been "continuously available for return to this jurisdiction for trial" during the six month period beginning with the filing of his demand for trial. Because the State is obviously not required to extradite an unwilling foreign prisoner in order to satisfy his speedy trial demand, the burden was upon O'Bryan to make himself continuously available for voluntary return to Florida by executing or by standing ready to execute a waiver of extradition.
When proof was made that neither O'Bryan nor his counsel responded for 149 days to the Escambia prosecutor's letter of July 19, 1974, the State had satisfied its duty under Rule 3.191(e):
"A person who has not been continuously available for trial during the term provided for herein is not entitled to be discharged; no presumption of non-availability attaches, but if the State objects to discharge and presents any evidence tending to show non-availability, the accused then must by competent proof establish continuous availability during the term." (Emphasis added.)
The State presented evidence tending to show that O'Bryan was unavailable for a Florida trial because he was as yet unwilling unconditionally to waive extradition. That evidence cast on O'Bryan the burden to explain his failure to waive extradition promptly. The State was not required to prove a chain of custody, from the Escambia prosecutor to O'Bryan, of the letter inviting O'Bryan to waive extradition, nor to import witnesses from Tennessee to demonstrate O'Bryan's knowledge and his state of mind concerning waiver of extradition. *90 O'Bryan's general allegation that he had been available for trial was not substantiated.
Having been unavailable for trial in Florida during a substantial part of the six month period which began with the filing of his demand and having failed to show that the time that elapsed during his subsequent availability was unreasonable, O'Bryan's motion for discharge was properly denied.
Affirmed.
BOYER, C.J., and MILLS, J., concur.
NOTES
[1] The subsequent history of the case is told in Dickey v. State, 215 So.2d 772 (Fla.App. 1st, 1968), rev'd 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970).
[2] A detainer having been filed in this case, we need not explore whether the prosecutor "has otherwise attempted to secure the presence of the accused for trial." By this the Rule seems to contemplate action, perhaps less formal than the filing of a detainer, which similarly constitutes notice of a State commitment eventually to try and not to abandon the outstanding charge. Clearly the quoted language does not refer exclusively to diligent attempts to secure the presence of the accused for a speedy or imminent trial. That construction would anomalously begin the running of the critical six month period only when, months after the demand for speedy trial, the State finally gears up to provide it.
[3] Having by Rule made mutuality of commitment toward trial the difference between a trial in six months and one within a "reasonable time," it seems doubtful that, without the accused's consent, our Supreme Court would now permit the State to withdraw a detainer once lodged in order that the case might proceed more leisurely. The Court's description of such an option in Dickey, 200 So.2d at 527, antedated the Rule and its concept of alternative periods before trial.
[4] Our Rule does not suggest speedy trial standards applicable when the foreign prisoner does not demand a trial and the Florida prosecutor does not file a detainer. We do not comment on the prosecutor's duty in these circumstances except to point out that the prisoner's silence may be due to his ignorance of the charge. The ABA Standards on Speedy Trial, which we may say seem generally less flexible than our Rule, would require immediate notification of the accused if the prosecutor knows he is imprisoned elsewhere. ABA Standards, Speedy Trial § 3.1(a) (1968).
[5] The prosecutor's election must surely be exercised seasonably after the demand for trial. The Rule would be frustrated if the prosecutor could delay his decision unnecessarily and unreasonably, thus postponing the commencement of the six month trial period, if his election finally is to file a detainer. In deciding Dickey, our Supreme Court had no reason to think of the relatively fixed periods for trial later provided by Rule, but the Court's requirement that the State "must initiate action" in response to a demand for trial suggests that promptness is required of the State in electing under the Rule. 200 So.2d at 525.
[6] Rule 3.191(b)(3) does not say whether the court's determination of a reasonable time for trial is made prospectively, on application of one of the parties, or retrospectively, when a trial is in the offing and the full length and consequences of the delay are known. Subsection (d) (2) of the Rule contemplates that a period fixed by the Rule be extended for cause prospectively and within the period, not retrospectively. Mullin v. State, infra. In the determination of a "reasonable time" under subsection (b)(3), however, the trial court speaks not as a prophet but as a judge of the prejudice to the accused that in fact occurred and the inconvenience to the State that was in fact avoided by the known delay. It would seem, therefore, that the determination is made retrospectively.
[7] "No rights shall accrue to a person under this section if such person refuses to execute every waiver, consent or release necessary to secure his return to this jurisdiction, or if the custodial officials of the jurisdiction in which the prisoner is confined refuse to release him for return to this jurisdiction for trial while such refusal continues." Rule 3.191(b)(3), R.Cr.P. (Emphasis added).