Mr. Samuel E. Poole III Executive Director South Florida Water Management District Post Office Box 24680 West Palm Beach, Florida 33416-4680
Dear Mr. Poole:
You ask the following questions:
1. Does constitutional Amendment #5, requiring those in the Everglades Agricultural Area who cause water pollution to be primarily responsible for paying the costs of pollution abatement require implementing legislation?
2. Does constitutional Amendment #6, creating the Everglades Trust Fund, require implementing legislation?
In sum:
1. While the Legislature may enact provisions implementing Amendment #5, the amendment itself establishes a primary obligation on polluters to pay the costs of abating Everglades pollution regardless of legislative action. The district's duties and responsibilities in ensuring the abatement of water pollution within the Everglades make it the proper party to enforce the rights created by the amendment. The district, therefore, has the duty to require those who are responsible for water pollution within the Everglades Agricultural Area or Everglades Protection Area to be primarily responsible for paying the costs of pollution abatement.
2. Constitutional Amendment #6 does not require implementing legislation since it contains sufficient direction for carrying its purpose into effect without the aid of legislative enactment.
The Supreme Court of Florida has developed the following test for determining whether a constitutional provision is self-executing:
"The basic guide, or test, in determining whether a constitutional provision should be construed to be self-executing, or not self-executing, is whether or not the provision lays down a sufficient rule by means of which the right or purpose which it gives or is intended to accomplish may be determined, enjoyed, or protected without the aid of legislative enactment."[1]
The language used in the constitutional provision itself is the principle criterion to be considered in determining this issue.[2]
For example, if the language of the Constitution is directed to the Legislature, or if it appears from the language used and the circumstances of its adoption that subsequent legislation was contemplated to carry it into effect, such a provision would not be self-executing.[3]
The will of the people, however, is paramount in determining whether a constitutional provision is self-executing.[4] As stated by the Supreme Court of Florida in Gray v. Bryant,[5]
"[T]he modern doctrine favors the presumption that constitutional provisions are intended to be self-operating. This is so because in the absence of such a presumption the legislature would have the power to nullify the will of the people expressed in their constitution, the most sacrosanct of all expressions of the people."
QUESTION ONE
Constitutional Amendment #5 amends Article II, Section 7, Florida Constitution, by inserting an (a) immediately before the current text, and by adding a new subsection (b), which reads:
"(b) Those in the Everglades Agricultural Area who cause water pollution within the Everglades Protection Area or the Everglades Agricultural Area shall be primarily responsible for paying the costs of the abatement of that pollution. For the purposes of this subsection, the terms "Everglades Protection Area" and "Everglades Agricultural Area" shall have the meanings as defined in statutes in effect on January 1, 1996."
With passage of constitutional Amendment #5, the people of Florida have overwhelmingly dictated that those who have polluted the Everglades must be primarily responsible for paying the costs of cleaning up the Everglades.
As discussed above, it is presumed that constitutional amendments are self-executing, the rationale being that the Legislature could otherwise defeat the will of the people. This is particularly so where, as here, the constitutional amendment is proposed by citizen initiative. Therefore, while the Legislature may enact provisions implementing Amendment #5, the amendment itself establishes an obligation on polluters of the Everglades to pay the costs of abating such pollution irrespective of legislative action.
Moreover, the general rule that wherever the law recognizes a right it gives a remedy applies to rights conferred by statutory or constitutional provisions.[6] Thus, where a statute or the constitution creates a new right or obligation and does not prescribe any particular remedy for its enforcement, the party entitled to the benefit of the provision may resort to any common law or statutory remedy that will afford adequate and proper redress. If an appropriate and adequate remedy is not present, the court may fashion a suitable remedy to accomplish the purpose of the law.[7]
This amendment, imposing an obligation on polluters of the Everglades to pay the costs of their pollution, creates an attendant remedy for enforcement of that obligation. Such a remedy may be enforced by any beneficiary of the fulfillment of that obligation.
The South Florida Water Management District (SFWMD) is responsible for administering the Everglades Trust Fund, created by Amendment #6, to be used for the conservation and protection of natural resources and abatement of water pollution in the Everglades Protection Area and the Everglades Agricultural Area. Moreover, the Legislature has identified SFWMD as the entity authorized "to proceed expeditiously with implementation of" the state's comprehensive program to revitalize the Everglades, including programs and projects to improve water quality and "to pursue comprehensive and innovative solutions to issues of water quality . . . which face the Everglades ecosystem."[8] Section 373.4592, Florida Statutes, specifically makes it the responsibility of SFWMD to "aggressively pursue implementation" of the state's program to restore and protect the Everglades.[9]
Clearly, the district's duties and responsibilities in ensuring the abatement of water pollution within the Everglades make it the proper party to enforce the rights created by Amendment #5. It is the district's responsibility, therefore, to implement the constitutional mandate consonant with its statutory duties to promote Everglades restoration and protection.
Accordingly, I am of the opinion that the South Florida Water Management District has the duty to effectuate the constitutional mandate that those responsible for polluting the Everglades Agricultural Area or Everglades Protection Area pay for the abatement of their pollution.
QUESTION TWO
Constitutional Amendment #6 creates a new section 17 at the end of Article X providing:
"SECTION 17, Everglades Trust Fund.
(a) There is hereby established the Everglades Trust Fund, which shall not be subject to termination pursuant to Article III, Section 19(f). The purpose of the Everglades Trust Fund is to make funds available to assist in conservation and protection of natural resources and abatement of water pollution in the Everglades Protection Area and the Everglades Agricultural Area. The trust fund shall be administered by the South Florida Water Management District, or its successor agency, consistent with statutory law.
(b) The Everglades Trust Fund may receive funds from any source, including gifts from individuals, corporations or other entities; funds from general revenue as determined by the Legislature; and any other funds so designated by the Legislature, by the United States Congress or by any other governmental entity.
(c) Funds deposited to the Everglades Trust Fund shall be expended for purposes of conservation and protection of natural resources and abatement of water pollution in the Everglades Protection Area and Everglades Agricultural Area.
(d) For purposes of this subsection, the terms "Everglades Protection Area," "Everglades Agricultural Area" and "South Florida Water Management District" shall have the meanings as defined in statutes in effect on January 1, 1996."
Amendment #6 establishes the Everglades Trust Fund and provides for the funding of the trust fund. It further designates who administers the fund and relates the purpose for which trust funds may be used. Thus, the amendment contains sufficient direction for its implementation without further action by the Legislature.
Accordingly, I am of the opinion that Amendment #6 is self-executing.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] Gray v. Bryant, 125 So.2d 846 (Fla. 1960). See also,Schreiner v. McKenzie Tank Lines, 408 So.2d 711 (Fla. 1st DCA 1982), approved and adopted, 432 So.2d 567 (Fla. 1983); Op. Att'y Gen. Fla. 77-136 (1977).
[2] See generally, 16 C.J.S. Constitutional Law s. 46.
[3] Id. Cf., Plante v. Smathers, 372 So.2d 933 (Fla. 1979); andWilliams v. Smith, 360 So.2d 417 (Fla. 1978). And see, Op. Att'y Gen. Fla. 91-8 (1991), in which this office concluded that the three-day waiting period for the purchase of handguns was not self-executing since the constitutional provision itself required the Legislature to enact legislation implementing the provision.
[4] Gray v. Bryant, supra; Schreiner v. McKenzie Tank Lines Risk Management Services, Inc., supra.
[5] 125 So.2d at 851.
[6] Reynolds v. State, 224 So.2d 769 (Fla. 2d DCA 1969), cert.
discharged, 238 So.2d 598 (Fla. 1970); 1A C.J.S. Actions s. 11c.
[7] Century Village, Inc., v. Wellington, Etc., 361 So.2d 128
(Fla. 1978); 1A C.J.S. Actions s. 11d.
[8] Section 373.4592(1)(b) and (1)(e), Fla. Stat.
[9] See, e.g., s. 373.4592(4)(a), Fla. Stat.