DICKEY *v.* FLORIDA

No. 728.   Argued January 21, 1970—Decided May 25, 1970

*John D. Buchanan, Jr.,* argued the cause and filed a brief for petitioner.

*George R. Georgieff,* Assistant Attorney General of Florida, argued the cause for respondent.   With him on the brief was *Earl Faircloth,* Attorney General.

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted the writ in this case to consider the petitioner's claim that he had been denied his Sixth Amendment right to a speedy trial: he was tried in 1968 on charges of alleged criminal acts committed in 1960.

Prior to the commencement of his jury trial in 1968 for armed robbery petitioner, Robert Dickey, moved to quash the information against him, alleging, *inter alia*, that if he were tried he would be denied his right to a speedy trial, as guaranteed by § 11 of the Declaration of Rights of the Florida Constitution [1] and the Sixth Amendment to the United States Constitution.[2] The motion was denied. Dickey was subsequently tried and convicted. He appealed to the Florida District Court of Appeal, First District, alleging error in the trial court's denial of his motion to quash. The Court of Appeal affirmed the conviction in a brief order. 215 So. 2d 772 (1968). We granted Dickey leave to proceed *in forma pauperis* and granted his petition for a writ of certiorari. 396 U. S. 816 (1969). We reverse.

I

At about 2 o'clock in the morning of June 28, 1960, Clark's Motor Court in Quincy, Gadsden County, Florida, was robbed by a lone armed robber. The victim and only eyewitness was Mrs. Ralph Clark. She immediately reported the crime to Deputy County Sheriff Martin and gave a description of the robber to him; this description was routinely recorded for later reference. Shortly thereafter, Dickey was taken into custody on federal bank robbery charges and placed in the

---

[1] The Declaration of Rights, Florida Constitution, reads in pertinent part:

Section 11. Rights of accused; speedy trial; etc.—

"In all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury, in the county where the crime was committed . . . ."

[2] The Sixth Amendment to the United States Constitution provides in pertinent part:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."

Jackson County Jail, Marianna, Florida. Apparently the description Mrs. Clark had given Deputy Martin was sufficiently similar to Dickey that on July 1, 1960, he showed Mrs. Clark a picture of Dickey. Mrs. Clark and Deputy Martin then went to the Jackson County Jail where she identified Dickey as her assailant. Later that day Deputy Martin secured an arrest warrant charging Dickey with armed robbery.[3]

From July 1, 1960, to September 2, 1960, Dickey remained in the Jackson County Jail. The Gadsden County Sheriff's Office knew of his whereabouts but made no effort to serve the warrant or gain custody for the purpose of trial. On September 2, 1960, Dickey, having been convicted on federal charges, was removed from Florida, first to Leavenworth and then Alcatraz. On the same day, the Gadsden County warrant was sent to the Chief United States Marshal, Atlanta, Georgia, and a formal detainer was lodged against Dickey.

In 1962 Dickey filed in the Gadsden County Circuit Court a petition styled "writ of habeas corpus ad prosequendum" naming the State Attorney for Gadsden County as respondent and asking that he be required to show cause why he should not be ordered to either take the steps necessary to obtain Dickey's presence in Florida for trial or withdraw the detainer for failure to provide Dickey with a speedy trial, as guaranteed by the Sixth Amendment. The Circuit Court, in an order dated December 1, 1962, denied the petition on several grounds: first, that Dickey's unavailability for trial in Florida was the result of his voluntary commission of a federal crime, the natural consequence of which was incarceration in a federal penal institution; second, that

---

[3] Under Florida law this step tolled the statute of limitations. See *Rosengarten* v. *State,* 171 So. 2d 591 (Dist. Ct. App. Fla. 1965); *Dubbs* v. *Lehman,* 100 Fla. 799, 130 So. 36 (1930); *State* v. *Emanuel,* 153 So. 2d 839 (Dist. Ct. App. Fla. 1963).

the speedy-trial issue was prematurely raised because only at the time of trial can a determination be made as to whether the delay has made a fair trial impossible; third, that even if the denial of an immediate trial was violative of Dickey's Sixth Amendment rights, it was a deprivation caused wholly by the federal officials having custody of his person, and any relief had to flow from those authorities.

Dickey filed papers raising substantially the same contentions on two later occasions, April 1, 1963, and March 28, 1966. The Circuit Court denied both petitions, simply citing the prior denial dated December 1, 1962.

Dickey next petitioned the Supreme Court of Florida to issue a writ of mandamus ordering the Circuit Court to either secure his return for trial or withdraw the detainer against him. The Circuit Court judge filed as a return the orders of December 1962, April 1963, and April 1966. Thereafter the Attorney General of Florida filed a brief in opposition arguing that Dickey should not be heard to complain that he had not received a speedy trial in Gadsden County because his unavailability was caused by the voluntary commission of criminal acts. Counsel was appointed for Dickey and the Florida Supreme Court heard argument on the petition for mandamus.

The Florida Supreme Court rejected the State's claim that a person incarcerated for one crime has no right to demand his constitutionally guaranteed right to a speedy trial on another charge. *Dickey* v. *Circuit Court,* 200 So. 2d 521 (1967). The court held that incarceration does not make the accused unavailable since there have long been means by which one jurisdiction, for the purpose of a criminal trial, can obtain custody of a prisoner held by another. That court also held that the prisoner's demand upon the accusing State gives rise

to an obligation to act affirmatively to secure his presence for trial; failure of the accusing State to promptly obtain the defendant from the detaining sovereign might invalidate any judgment ultimately obtained, if the time lapse is sufficiently great and is not excused.[4] The Florida Supreme Court concluded that once the discretionary decision to charge a prisoner with a crime has been made, an obligation arises to act diligently toward procuring the accused for trial and that obligation is a ministerial duty subject to a writ of mandamus. However, since Dickey had named the Circuit Court as the respondent, rather than the appropriate State Attorney, the petition was dismissed without prejudice to his right to file another petition naming the appropriate respondent.

On September 1, 1967, Dickey filed with the Circuit Court a motion to have the court order the Gadsden County State Attorney to dismiss the detainer warrant because he had been denied his right to a speedy trial. The State Attorney then filed a petition for a writ of habeas corpus *ad prosequendum* to secure Dickey's return to Florida for trial. On December 15, 1967, the Circuit Court issued the writ, and on the same day the State Attorney filed an information charging Dickey with the armed robbery allegedly committed in 1960. Dickey was returned to Florida on January 23, 1968. On January 30, the day before the trial was to begin, Dickey's appointed counsel filed a motion for a continuance so that the whereabouts of two witnesses could

---

[4] The decision of the Florida Supreme Court was based upon both the Florida Constitution's guarantee of a speedy trial, see n. 1, *supra*, and the similar guarantee in the Sixth Amendment, the latter being applicable to the States through the Fourteenth Amendment's Due Process Clause. *Klopfer* v. *North Carolina*, 386 U. S. 213 (1967). The Florida court treated these guarantees as substantively coterminous. See 200 So. 2d 521, 524, 526–527.

be determined, and a motion asking that the information be quashed on the ground that the delay of over seven years amounted to a denial of Dickey's right to a speedy trial. The motion alleged that the delay was sufficiently prejudicial to make a fair trial impossible.[5] The Circuit Court granted the continuance but took the motion to quash under advisement. The trial was set for February 13.

Dickey's counsel filed another motion for a continuance, dated February 12, stating that one of the witnesses could not be located and that more time was needed.[6] The court denied the motion and, before the commencement of the trial on the next day, denied the motion to quash.

At the trial Mrs. Clark testified from memory as to the description she had given the deputy after the crime, that she had identified Dickey in the Jackson County Jail, and that he was the robber. She stated that she could not recall having seen Dickey before the night of the crime. Deputy Martin also testified concerning the identification at the Jackson jail, noting that the jailer who had been present when Mrs. Clark viewed Dickey had since died. He further testified as to the description of the robber Mrs. Clark had given him, admitting that his memory was hazy and that the notes he

---

[5] The motion to quash stated that an essential and material witness, Mrs. Hazel Varnadore, Dickey's sister, had died in 1964. The motion further stated that had she been available she would have testified that Dickey called her at 12:15 o'clock in the morning of June 28, 1960, from Waycross, Georgia. The motion was accompanied by an affidavit to the same effect, signed by Dickey.

[6] In both the January 30 and February 12 motions for a continuance Dickey's counsel asserted that he had been unable to locate one A. C. Strickland. The defense expected this witness to testify that he had been with Dickey in Waycross, Georgia, on June 28, 1960, the date of the crime. This witness was never located.

had made while investigating the crime had long since been destroyed.

The record indicates that Dickey's defense consisted of his claim that he was in Waycross, Georgia, at the time of the crime and of testimony of another witness that he and Dickey had visited the victimized motel several times. From this latter evidence the defense argued the unlikelihood that Dickey would commit robbery at a place where he was known and would be recognized.

Dickey was convicted and sentenced to 10 years' imprisonment in the State Penitentiary, the sentence to run consecutively with the federal term he was then serving. He then sought review in the Florida District Court of Appeal, alleging that the trial judge had erred in not granting his motion to quash. That court affirmed the conviction without opinion, saying only that "appellant . . . failed to demonstrate reversible error . . . ." 215 So. 2d 772, 773.

## II

The record in this case shows that petitioner was available to the State at all times during the seven-year period before his trial. The State suggests no tenable reason for deferring the trial in the face of petitioner's diligent and repeated efforts by motions in the state court in 1962, 1963, and 1966 to secure a prompt trial. In the interval two witnesses died and another potential defense witness is alleged to have become unavailable. Police records of possible relevance have been lost or destroyed.

Florida argues that the right of the petitioner under the Federal Constitution did not arise until this Court's decision in *Klopfer* v. *North Carolina,* 386 U. S. 213 (1967), and that not until *Smith* v. *Hooey,* 393 U. S. 374 (1969), was there a constitutional requirement that the

State press for trial of a defendant in custody in another jurisdiction.

As noted by the Court in *Smith* v. *Hooey,* the holding of the *Klopfer* case was that

> "the Fourteenth Amendment, [applying] the Sixth Amendment right to a speedy trial is enforceable against the States as 'one of the most basic rights preserved by our Constitution.'" 393 U. S., at 374–375.

From this the Court went on to hold that on demand a State had a duty to make a diligent and good-faith effort to secure the presence of the accused from the custodial jurisdiction and afford him a trial. In *Smith* we remanded the case to the state court without deciding whether the defendant, when available for trial in the state court, would be required to show prejudice arising from the delay.

Here the State of Florida brought the petitioner back to Florida, tried, and convicted him. Petitioner's challenge is directly to the power of the State to try him after the lapse of almost eight years during which he repeatedly demanded and was denied a trial.

The right to a speedy trial is not a theoretical or abstract right but one rooted in hard reality in the need to have charges promptly exposed. If the case for the prosecution calls on the accused to meet charges rather than rest on the infirmities of the prosecution's case, as is the defendant's right, the time to meet them is when the case is fresh. Stale claims have never been favored by the law, and far less so in criminal cases.[7] Although a great many accused persons seek to put

---

[7] Cf. American Bar Association Project on Standards for Criminal Justice, Speedy Trial § 4.1 (Approved Draft 1968).

off the confrontation as long as possible, the right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial.[8]  This is brought sharply into focus when, as here, the accused presses for an early confrontation with his accusers and with the State.  Crowded dockets, the lack of judges or lawyers, and other factors no doubt make some delays inevitable.  Here, however, no valid reason for the delay existed; it was exclusively for the convenience of the State.  On this record the delay with its consequent prejudice is intolerable as a matter of fact and impermissible as a matter of law.

In addition to exerting every effort to require the State to try him, there is present in this record abundant evidence of actual prejudice to petitioner in the death of two potential witnesses, unavailability of another, and the loss of police records.  This is sufficient to make a remand on that issue unnecessary.[9]  We therefore reverse and remand to the District Court of Appeal of Florida, First District, with directions to vacate the judgment appealed from and direct the dismissal of any proceedings arising out of the charges on which that judgment was based.

Mr. Justice Harlan, concurring.

I join the Court's opinion with the following reservation and comment.

I think that claims such as those of the petitioner in this case, arising out of a state proceeding, should be

---

[8] Cf. American Bar Association Project on Standards for Criminal Justice, The Prosecution Function and the Defense Function § 2.9 (Tent. Draft Mar. 1970).

[9] Cf. *Regina* v. *Robins*, 1 Cox Crim. Cas. 114 (Somerset Winter Assizes, 1844).

judged by the principles of procedural fairness required by the Due Process Clause of the Fourteenth Amendment, and not by "incorporating" or "absorbing" into the Fourteenth Amendment the "speedy trial" provision of the Sixth Amendment. See my concurring opinion in *Klopfer* v. *North Carolina*, 386 U. S. 213, 226 (1967), and my separate opinion in *Smith* v. *Hooey*, 393 U. S. 374, 383 (1969). This reservation reflects the hope that some day the Court will return to adjudicating state criminal cases in accordance with the historic meaning of the Due Process Clause of the Fourteenth Amendment, see, *e. g.*, my dissenting opinion in *Duncan* v. *Louisiana*, 391 U. S. 145, 171 (1968).

However, whether it be the Due Process Clause or the Sixth Amendment that is deemed to apply, I fully agree that petitioner's federal constitutional rights were violated by Florida's actions in this instance.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE MARSHALL joins, concurring.

## I

In *Klopfer* v. *North Carolina*, 386 U. S. 213 (1967), this Court held that the Sixth Amendment standards governing speedy trial are made obligatory on the States by the Fourteenth Amendment Due Process Clause. Petitioner's prosecution, however, began in July 1960, nearly seven years before our decision in *Klopfer*. Accordingly, assuming, *arguendo,* that *Klopfer* is not retroactive, the question here is whether petitioner's trial was unconstitutionally delayed under the test of due process applicable to the States prior to *Klopfer*. See, *e. g., Beasley* v. *Pitchess*, 358 F. 2d 706 (C. A. 9th Cir. 1966); *United States ex rel. Von Cseh* v. *Fay*, 313 F. 2d 620 (C. A. 2d Cir. 1963); *Germany* v. *Hudspeth*, 209 F. 2d 15,

18–19 (C. A. 10th Cir. 1954).[1]  Petitioner has established his claim.  Although the Florida police secured an arrest warrant in 1960 charging petitioner with armed robbery, he was not tried until 1968; he demanded a speedy trial as early as 1962; he has shown that he was substantially prejudiced by the delay; and the State, it appears, was deliberately slow in prosecuting him.  Thus, I join the Court's opinion.

I do not read the Court's opinion as deciding that in post-*Klopfer* cases (1) the defendant can challenge only delay occurring after his arrest; (2) he is not entitled to a speedy trial unless he demands it at the time of the delay; (3) he must prove actual prejudice, or (4) the delay must be deliberately caused by the government.  It is timely to note that the Court has as yet given scant attention to these and other questions essential to the definition of the speedy-trial guarantee.  Before *Klopfer,* only three of our opinions dealt at any length with the right, and each was decided with little analysis of its scope and content.  See *Beavers* v. *Haubert,* 198 U. S. 77 (1905); *Pollard* v. *United States,* 352 U. S. 354 (1957); *United States* v. *Ewell,* 383 U. S. 116 (1966).  *Klopfer* itself attempted no extensive analysis; nor did our later decision, *Smith* v. *Hooey,* 393 U. S. 374 (1969).  And today we do not consider the effect of the application of the Speedy Trial Clause to the States.  Thus, although we said in *Klopfer* that the right to a speedy trial is "one of the most basic rights preserved by our Constitution," 386 U. S., at 226, a guarantee "as fundamental as any of the rights secured by the Sixth Amendment," *id.,* at 223, we have yet even

---

[1] Cf. *In re Oliver,* 333 U. S. 257 (1948), where, without reliance on the Sixth Amendment, the Court held that a State violates the Due Process Clause by denying an accused a public trial.  The Sixth Amendment, of course, links the rights of speedy and public adjudication, guaranteeing in one phrase "a speedy and public trial."

to trace its contours. Accordingly, I think it appropriate to point out certain of the major problems that courts must consider in defining the speedy-trial guarantee.

## II

In my view, there are two groups of issues to be met in interpreting the right: first, those concerned with when during the criminal process the speedy-trial guarantee attaches, and second, those concerned with the criteria by which to judge the constitutionality of the delays to which the right does attach. These questions, of course, must be answered in light of the purposes of the Speedy Trial Clause.[2] The evils at which the Clause is directed are readily identified. It is intended to spare an accused those penalties and disabilities—incompatible with the presumption of innocence—that may spring from delay in the criminal process. The Court recognized in *Ewell, supra,* at 120, that the speedy-trial right "is an important safeguard to prevent undue and oppressive incarceration prior to trial." We also recognized in *Ewell* that a speedy trial is intended "to minimize anxiety and concern accompanying public accusation." *Ibid.* As we observed in *Klopfer, supra,* at 222, lengthy prosecution may subject an accused to

---

[2] Records of the intent of its Framers are sparse. There is, for example, no account of the Senate debate, and the House deliberations give little indication of the Representatives' intent. See Note, The Right to a Speedy Trial, 20 Stan. L. Rev. 476, 484–485 (1968). Nonetheless, there appears to have been general agreement among the Framers that a speedy trial is essential to fundamental fairness. The principal opposition to the Clause was insignificant: it came from a Representative concerned lest trial be so speedy that an accused not have an opportunity to secure witnesses material to his defense. See 1 Annals of Cong. 756; F. Heller, The Sixth Amendment 31 (1951). The Framers seem clearly to have understood and valued the right in the context of its common-law antecedents. See the historical discussion in *Klopfer, supra,* at 223–226.

"public scorn and deprive him of employment, and almost certainly will force curtailment of his speech, associations and participation in unpopular causes."

These disabilities, singly or in league, can impair the accused's ability to mount a defense. The passage of time by itself, moreover, may dangerously reduce his capacity to counter the prosecution's charges. Witnesses and physical evidence may be lost; the defendant may be unable to obtain witnesses and physical evidence yet available. His own memory and the memories of his witnesses may fade. Some defenses, such as insanity, are likely to become more difficult to sustain; as one court has stated, "[p]assage of time makes proof of any fact more difficult. When the fact at issue is as subtle as a mental state, the difficulty is immeasurably enhanced." *Williams* v. *United States,* 102 U. S. App. D. C. 51, 55, 250 F. 2d 19, 23 (1957). See also *Ewell, supra,* at 120.

The Speedy Trial Clause protects societal interests, as well as those of the accused. The public is concerned with the effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. Just as delay may impair the ability of the accused to defend himself, so it may reduce the capacity of the government to prove its case. See *Ponzi* v. *Fessenden,* 258 U. S. 254, 264 (1922). Moreover, while awaiting trial, an accused who is at large may become a fugitive from justice or commit other criminal acts. And the greater the lapse of time between commission of an offense and the conviction of the offender, the less the deterrent value of his conviction.[3]

---

[3] See American Bar Association Project on Standards for Criminal Justice, Speedy Trial 10–11 (Approved Draft 1968); *United States ex rel. Solomon* v. *Mancusi,* 412 F. 2d 88, 93 (C. A. 2d Cir. 1969) (Feinberg, J., dissenting).

Deliberate governmental delay in the hope of obtaining an advantage over the accused is not unknown. In such a circumstance, the fair administration of criminal justice is imperiled. The Speedy Trial Clause then serves the public interest by penalizing official abuse of the criminal process and discouraging official lawlessness. See, e. g., *United States* v. *Provoo,* 17 F. R. D. 183 (D. C. Md.), aff'd *per curiam,* 350 U. S. 857 (1955). Thus the guarantee protects our common interest that government prosecute, not persecute, those whom it accuses of crime.

## III

Against this background of the purposes of the speedy-trial safeguard, I turn to the question of when during the criminal process the right attaches. A criminal prosecution has many stages, and delay may occur during or between any of them. It may take place at the beginning of the process: between the time at which the government decides to prosecute a man and has sufficient evidence to proceed against him and the actual time of his arrest or indictment.[4] Or it may occur, for instance, between arrest and indictment,[5] during trial, or between trial and sentencing.

Authorities agree that delay between indictment and trial is subject to the speedy-trial safeguard, e. g., *Lucas* v. *United States,* 363 F. 2d 500, 502 (C. A. 9th Cir. 1966), and there is substantial authority that the right attaches upon arrest, e. g., *Hardy* v. *United States,* 119 U. S. App. D. C. 364, 365, 343 F. 2d 233, 234 (1964). But see, e. g., *Reece* v. *United States,* 337 F. 2d 852 (C. A. 5th Cir. 1964). Similarly, it has been generally held that the Speedy

---

[4] Delay may also occur during the appellate process or during collateral proceedings. I do not consider those situations here.

[5] By "indictment" I refer to the bringing of charges against a defendant, whether by information, indictment, or some analogous procedure.

Trial Clause applies to intervals between separate indictments or between separate trials on the same charge, *e. g., Williams* v. *United States, supra.* This Court has assumed, *arguendo,* but has not decided, that the interval between judgment and sentencing is governed by the clause, *Pollard* v. *United States, supra,* at 361; see also *Welsh* v. *United States,* 348 F. 2d 885 (C. A. 6th Cir. 1965). I have found no cases dealing with delay during the trial. With some exceptions,[6] it has been held that the right to speedy trial does not apply to delays that occur before the defendant's arrest or indictment, *e. g., Parker* v. *United States,* 252 F. 2d 680, 681 (C. A. 6th Cir. 1958); *Terlikowski* v. *United States,* 379 F. 2d 501, 503–504 (C. A. 8th Cir. 1967).

Does the speedy-trial guarantee apply to all delays between a defendant's arrest and his sentencing? The view that it does is not without support in the wording of the Sixth Amendment. The Constitution says that an "accused" is entitled to a speedy trial "[i]n all criminal prosecutions." Can it be that one becomes an "accused" only after he is indicted, or that the Sixth Amendment subdivides "prosecution" into various stages, granting the right to speedy trial in some and withholding it in others? In related contexts involving other clauses of the Sixth Amendment, we have held that the "prosecution" of an "accused" can begin before his indictment; for example, in *Escobedo* v. *Illinois,* 378 U. S. 478, 490 (1964), we spoke of the time when "investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect." And as regards realization of the purposes of the Speedy Trial Clause, the

---

[6] See, *e. g., Mann* v. *United States,* 113 U. S. App. D. C. 27, 29–30, n. 4, 304 F. 2d 394, 396–397, n. 4 (1962); *United States* v. *Reed,* 285 F. Supp. 738, 740 (D. C. D. C. 1968); cf. *Sanchez* v. *United States,* 341 F. 2d 225, 228 n. 3 (C. A. 9th Cir. 1965).

possibility of harm to interests protected by the clause is certainly great whenever delay occurs after arrest.[7]

The applicability of the safeguard to delays occurring *before* arrest or indictment poses a more difficult question. A few courts have reasoned that the language of the Sixth Amendment precludes its application then,[8] and prior to arrest or indictment not all of the interests protected by the right are threatened. The accused suffers no preconviction penalty, since his freedom is not impaired by actual imprisonment or conditioned release. He suffers none of the personal or social disabilities that flow from public accusation. And, so far as society's interest in the effective prosecution of criminal cases is concerned, delay on the government's part need not impair its ability to prove the defendant's guilt beyond a reasonable doubt.[9]

---

[7] At whatever point delay then occurs, the accused can suffer the penalties and disabilities of a prolonged prosecution. His stock of emotional and financial resources continues to be spent. His capacity to defend himself may be undermined. It is true that once trial has begun, or after one trial has been completed, he should have less difficulty in defending himself; but even then delay can result in the loss of witnesses or deterioration in the value of available testimony, and, of course, issues for which no preparation was previously made can arise with the passage of time. The government's ability to prove its case can also suffer from delay; even should a conviction be obtained, its deterrent value would be lessened by its distance from the offense. And if governmental delay is deliberate, intended to harm the accused, it strikes at the fairness of our criminal process.

[8] See, *e. g., People* v. *Jordan,* 45 Cal. 2d 697, 708, 290 P. 2d 484, 491 (1955). Again, however, it can be argued that it is unrealistic for speedy-trial purposes to say that a man is not an "accused" once the government has decided to prosecute him and has sufficient evidence to move against him, or that his "prosecution" does not begin at that time.

[9] The government may delay for a variety of reasons, *e. g.,* to gain time in which to strengthen and document its case while the potential defendant remains unaware, or in the hope that

46

Deliberate governmental delay designed to harm the accused, however, constitutes abuse of the criminal process. It lessens the deterrent value of any conviction obtained. And it very probably reduces the capacity of the accused to defend himself; unlike the prosecution, he may remain unaware that charges are pending and thus fail to take steps necessary to his defense.[10] Accordingly, some of the interests protected by the Speedy Trial Clause can be threatened by delay prior to arrest or indictment. Thus, it may be that for the purposes of the clause to be fully realized, it must apply to any delay in the criminal process that occurs after the government decides to prosecute and has sufficient evidence for arrest or indictment.[11]

---

the passage of time will deny him certain witnesses or evidence. The government may also delay, not with a view to ensuring the conviction of the accused, but to use the threat of his trial to coerce him into assisting police operations or becoming a prosecution witness in other cases. Delay, of course, may also result because the government lacks sufficient resources to move more quickly or because it negligently fails to act. When delay is not the result of an intentional attempt to strengthen the government's case, it will very likely make more difficult proof of the accused's guilt.

[10] Such a person is in much the same position as an accused imprisoned in one jurisdiction who is unaware that another jurisdiction has formal charges outstanding against him. The latter has been held to have the protection of the Speedy Trial Clause, e. g., Fouts v. United States, 253 F. 2d 215, 218 (C. A. 6th Cir. 1958).

[11] This would not necessarily mean that the government should be denied broad discretion to determine that its evidence is insufficient to make worthwhile an arrest or indictment, or that it may not have legitimate reasons for delay other than insufficient evidence; moderate delay necessary for law enforcement operations, such as the completion of undercover work involving a number of suspects, may be compatible with the Speedy Trial Clause. And, of course, the question whether, after an accused has been arrested or indicted, he may challenge prior governmental delay is wholly distinct from the question whether before arrest or indictment he may bring an action to compel the government to begin formal proceedings against him.

Some lower courts have held that the applicable statute of limitations provides the exclusive control over governmental delay prior to arrest or indictment. See, *e. g., United States* v. *Panczko,* 367 F. 2d 737, 739 (C. A. 7th Cir. 1966), which found delay in bringing charges "limited *only* by the statute of limitations." We said in *Ewell, supra,* at 122, that "the applicable statute of limitations . . . is usually considered the primary guarantee against bringing overly stale criminal charges." Such legislative judgments are clearly entitled to great weight in determining what constitutes unreasonable delay. But for some crimes there is no statute of limitations. None exists, for example, in prosecutions of federal capital offenses, 18 U. S. C. § 3281. And, even when there is an applicable statute, its limits are subject to change at the will of the legislature, and they are not necessarily co-extensive with the limits set by the Speedy Trial Clause. Judge Wright, concurring in the result in *Nickens* v. *United States,* 116 U. S. App. D. C. 338, 343 n. 4, 323 F. 2d 808, 813 n. 4 (1963), observed: "The legislature is free to implement the [speedy-trial] right and to provide protections greater than the constitutional right. But the minimum right of the accused to a speedy trial is preserved by the command of the Sixth Amendment, whatever the terms of the statute." Cf. *Nickens, supra,* at 340 n. 2, 323 F. 2d, at 810 n. 2.

### IV

What are the criteria to be used in judging the constitutionality of those delays to which the safeguard applies? This Court has stated that "[t]he right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice." *Beavers* v. *Haubert, supra,* at 87. We have also observed that "[w]hile justice should be administered with dispatch, the essential ingredient is

orderly expedition and not mere speed." *Smith* v. *United States,* 360 U. S. 1, 10 (1959). It appears that consideration must be given to at least three basic factors in judging the reasonableness of a particular delay: the source of the delay, the reasons for it, and whether the delay prejudiced interests protected by the Speedy Trial Clause.[12]

A defendant may be disentitled to the speedy-trial safeguard in the case of a delay for which he has, or shares, responsibility. It has been held, for example, that an accused cannot sustain a speedy-trial claim when delay results from his being a fugitive from justice, making dilatory pleadings or motions, failing to object when a continuance is granted the government,[13] or from delay occasioned by his incompetence to stand trial, *e. g., United States* v. *Davis,* 365 F. 2d 251, 255 (C. A. 6th Cir. 1966).

It has also been held that the defendant's failure, upon being confronted with delay, to demand a speedy trial justifies the denial of his claim.[14] In other words, his silence—or inaction—has been construed as an implied relinquishment of the right to speedy trial, *e. g., United States* v. *Lustman,* 258 F. 2d 475, 478 (C. A. 2d

---

[12] Four factors—length of the delay, the reason for it, prejudice to the defendant caused by it, and waiver by the accused of speedy trial—are often mentioned as the determinants of reasonableness. See, *e. g., United States* v. *Simmons,* 338 F. 2d 804, 807 (C. A. 2d Cir. 1964). The length of the delay, however, appears to be significant principally as it affects the legitimacy of the reasons for delay and the likelihood that it had prejudicial effects. And waiver by the accused seems relevant primarily to the source of the delay.

[13] See the cases cited in Note, The Lagging Right to a Speedy Trial, 51 Va. L. Rev. 1587, 1598–1599 (1965).

[14] But see the rejection by some States of the view that the right to speedy trial can be lost by silence or inaction. Representative cases are cited in 51 Va. L. Rev., *supra,* n. 13, at 1604 n. 87.

Cir. 1958).[15] The view that an accused loses his right to a speedy trial by silence or inaction is open to question on at least three grounds. First, it rests on what may be an unrealistic understanding of the effect of delay. One court in explaining the "demand" rule stated that it "is based on the almost universal experience that delay in criminal cases is welcomed by defendants as it usually operates in their favor." *United States ex rel. Von Cseh* v. *Fay,* 313 F. 2d 620, 623 (C. A. 2d Cir. 1963). It is true that delay may be welcomed by an accused, especially if he greatly fears the possible consequences of his trial. See *United States* v. *Chase,* 135 F. Supp. 230, 233 (D. C. N. D. Ill. 1955). But an accused may just as easily object to delay for its prolongation of the time in which he must live in uncertainty, carrying the emotional and financial burdens of accusation, and possessing the conditioned freedom of a potential felon. Moreover, the passage of time may threaten the ability of both the defendant and the government to prepare and present a complete case; in this regard, delay does not inherently benefit the accused any more than it does the prosecution.

Second, the equation of silence or inaction with waiver is a fiction that has been categorically rejected by this Court when other fundamental rights are at stake. Over 30 years ago in *Johnson* v. *Zerbst,* 304 U. S. 458, 464 (1938), we defined "waiver" as "an intentional relinquishment or abandonment of a known right or privilege." We have made clear that courts should "indulge every reasonable presumption against waiver," *Aetna Ins. Co.* v. *Kennedy,* 301 U. S. 389, 393 (1937), and that they should "not presume acquiescence in the loss of fundamental rights." *Ohio Bell Tel. Co.* v. *Public Util-*

---

[15] For elaboration of the "demand" rule, see generally Note, The Right to a Speedy Criminal Trial, 57 Col. L. Rev. 846, 852–855 (1957); 51 Va. L. Rev., *supra,* n. 13, at 1601–1609.

*ities Comm'n,* 301 U. S. 292, 307 (1937). In *Klopfer, supra,* at 223, we held that the right to a speedy trial "is as fundamental as any of the rights secured by the Sixth Amendment." It is a safeguard of the interests of both the accused and the community as a whole. Thus, can it be that affirmative action by an accused is required to *preserve*—rather than to *waive*—the right?

Third, it is possible that the implication of, waiver from silence or inaction misallocates the burden of ensuring a speedy trial. The accused has no duty to bring on his trial. He is presumed innocent until proved guilty; arguably, he should be presumed to wish to exercise his right to be tried quickly, unless he affirmatively accepts delay. The government, on the other hand, would seem to have a responsibility to get on with the prosecution, both out of fairness to the accused and to protect the community interests in a speedy trial. Judge Weinfeld of the District Court for the Southern District of New York has observed, "I do not conceive it to be the duty of a defendant to press that he be prosecuted upon an indictment under penalty of waiving his right to a speedy trial if he fails to do so. It is the duty of the public prosecutor, not only to prosecute those charged with crime, but also to observe the constitutional mandate guaranteeing a speedy trial. If a prosecutor fails to do so, the defendant cannot be held to have waived his constitutional right to speedy trial." *United States* v. *Dillon,* 183 F. Supp. 541, 543 (1960).[16]

---

[16] The defendant, in any event, cannot force the beginning of his trial, even if he takes affirmative steps to that end. The present case provides a striking instance of this fact. The government, on the other hand, can and does set the case for trial. Thus, constitutional right aside, the government might reasonably bear the burden of going forward with the trial since it alone has the ultimate capacity to do so. The burden, moreover, might reasonably fall

If the defendant does not cause the delay of his prosecution, the responsibility for it will almost always rest with one or another governmental authority. The police and prosecutor are not the only governmental officials whose conduct is governed by the Speedy Trial Clause; it covers that of court personnel as well, *e. g., Pollard* v. *United States, supra; Marshall* v. *United States,* 119 U. S. App. D. C. 83, 337 F. 2d 119 (1964). And the public officials responsible for delay may not even be associated with law enforcement agencies or the courts. Delay, for example, may spring from a refusal by other branches of government to provide these agencies and the judiciary with the resources necessary for speedy trials. See, *e. g., King* v. *United States,* 105 U. S. App. D. C. 193, 195, 265 F. 2d 567, 569 (1959).

When is governmental delay reasonable? Clearly, a deliberate attempt by the government to use delay to harm the accused, or governmental delay that is "purposeful or oppressive," is unjustifiable. *Pollard* v. *United States, supra,* at 361. See also *United States* v. *Provoo, supra.* The same may be true of any governmental delay that is unnecessary, whether intentional or negligent in origin.[17] A negligent failure by the government to ensure speedy trial is virtually as damaging to the interests protected by the right as an intentional failure; when negligence is the cause, the only interest necessarily unaffected is our common concern to prevent deliberate

on the government since the prosecutor is the initiating party in criminal proceedings. Cf. Fed. Rule Civ. Proc. 41 (b) (dismissal for failure to prosecute by the plaintiff).

[17] It has been held that negligent delay violates the Speedy Trial Clause, *Hanrahan* v. *United States,* 121 U. S. App. D. C. 134, 139, 348 F. 2d 363, 368 (1965); *United States* v. *Reed,* 285 F. Supp. 738, 741 (D. C. D. C. 1968). Cf. Fed. Rule Crim. Proc. 48 (b), which gives the federal courts discretion to dismiss an indictment if there has been "unnecessary" delay in prosecution.

misuse of the criminal process by public officials. Thus the crucial question in determining the legitimacy of governmental delay may be whether it might reasonably have been avoided—whether it was unnecessary. To determine the necessity for governmental delay, it would seem important to consider, on the one hand, the intrinsic importance of the reason for the delay, and, on the other, the length of the delay and its potential for prejudice to interests protected by the speedy-trial safeguard. For a trivial objective, almost any delay could be reasonably avoided. Similarly, lengthy delay, even in the interest of realizing an important objective, would be suspect. Perhaps the most important reason for the delay of one criminal prosecution is to permit the prosecution of other criminal cases that have been in process longer than the case delayed. But surely even this objective cannot justify interminable interruption of a prosecution.[18]

Finally, what is the role of prejudice in speedy-trial determinations? The discharge of a defendant for denial of a speedy trial is a drastic step, justifiable only when further proceedings against him would harm the interests protected by the Speedy Trial Clause. Thus it is unlikely that a prosecution must be ended simply because the government has delayed unnecessarily, without the agreement of the accused. The courts below, however, are divided in their conclusions regarding prejudice. One court has stated that "we think that a showing of

---

[18] As the court stated in *King* v. *United States*, 105 U. S. App. D. C. 193, 195, 265 F. 2d 567, 569 (1959), "[C]ases have to take their turn. The case on trial is entitled to deliberate consideration; the others on the calendar stack up. At the same time, too much heed to practicalities may encroach upon the individual's rights. If the legislature were to refuse to install sufficient judicial machinery to perform the judicial tasks, it might be necessary to turn some accused persons loose."

prejudice is not required when a criminal defendant is asserting a constitutional right under the Sixth Amendment," *United States* v. *Lustman,* 258 F. 2d 475, 477–478 (C. A. 2d Cir. 1958). Some have held that prejudice may be assumed after lengthy delays, *e. g., Hedgepeth* v. *United States,* 124 U. S. App. D. C. 291, 294 and n. 3, 364 F. 2d 684, 687 and n. 3 (1966). Others have insisted that its existence be shown by the defendant, *e. g., United States* v. *Jackson,* 369 F. 2d 936, 939 (C. A. 4th Cir. 1966), though some courts have shifted the burden of proof to the government after long delay, *e. g., Williams* v. *United States,* 102 U. S. App. D. C. 51, 53–54, 250 F. 2d 19, 21–22 (1957).

Although prejudice seems to be an essential element of speedy-trial violations, it does not follow that prejudice—or its absence, if the burden of proof is on the government—can be satisfactorily shown in most cases. Certainly, as the present case indicates, it can be established in some instances. It is obvious, for example, if the accused has been imprisoned for a lengthy period awaiting trial, or if the government has delayed in clear bad faith. But concrete evidence of prejudice is often not at hand. Even if it is possible to show that witnesses and documents, once present, are now unavailable, proving their materiality is more difficult. And it borders on the impossible to measure the cost of delay in terms of the dimmed memories of the parties and available witnesses. As was stated in *Ross* v. *United States,* 121 U. S. App. D. C. 233, 238, 349 F. 2d 210, 215 (1965): "[The defendant's] failure of memory and his inability to reconstruct what he did not remember virtually precluded his showing in what respects his defense might have been more successful if the delay had been shorter. . . . In a very real sense, the extent to which he was prejudiced by the Government's delay is evidenced by the difficulty he encountered in establishing with particularity the elements of

that prejudice." Similarly, there is usually little chance of conclusively showing the harm sustained by an accused as a result of public accusation. One commentator has stated that "[t]here is no way of proving the prejudice to the accused which occurs outside the courtroom . . . the public suspicion, the severing of family and social ties, and the personal anxiety." Note, The Right to a Speedy Criminal Trial, 57 Col. L. Rev. 846, 864. Nor, of course, is there any ready way of establishing the prejudice to community interests from delay.

Despite the difficulties of proving, or disproving, actual harm in most cases, it seems that inherent in prosecutorial delay is "potential substantial prejudice," *United States* v. *Wade,* 388 U. S. 218, 227 (1967), to the interests protected by the Speedy Trial Clause. The speedy-trial safeguard is premised upon the reality that fundamental unfairness is likely in overlong prosecutions. We said in *Ewell, supra,* at 120, that the guarantee of a speedy trial "is an important safeguard . . . to limit the possibilities that long delay will impair the ability of an accused to defend himself," and Judge Frankel of the District Court for the Southern District of New York has stated that "prejudice may fairly be presumed simply because everyone knows that memories fade, evidence is lost, and the burden of anxiety upon any criminal defendant increases with the passing months and years." *United States* v. *Mann,* 291 F. Supp. 268, 271 (1968).

Within the context of Sixth Amendment rights, the defendant generally does not have to show that he was prejudiced by the denial of counsel, confrontation, public trial, an impartial jury, knowledge of the charges against him, trial in the district where the crime was committed, or compulsory process.[19] Because potential substantial

---

[19] See the cases cited in 20 Stan. L. Rev., *supra,* n. 2, at 494–495.

prejudice inheres in the denial of any of these safeguards, prejudice is usually assumed when any of them is shown to have been denied. Because concrete evidence that their denial caused the defendant substantial prejudice is often unavailable, prejudice *must* be assumed, or constitutional rights will be denied without remedy. Prejudice is an issue, as a rule, only if the government wishes to argue harmless error. See *Chapman* v. *California,* 386 U. S. 18 (1967). When the Sixth Amendment right to speedy trial is at stake, it may be equally realistic and necessary to assume prejudice once the accused shows that he was denied a rapid prosecution.

The difficulty in such an approach, of course, lies in determining how long a prosecution must be delayed before prejudice is assumed. It is likely that generalized standards would have to be developed to indicate when during the course of a delay there arises a probability of substantial prejudice. Until delay exceeds that point, the burden most probably would remain on the accused to show that he was actually harmed. Once, however, delay exceeds that point, prejudice would cease to be an issue, unless the government wished to argue harmless error.[20] Though one temporal standard could very likely govern most prosecutions, account would need to be taken of those types of cases that diverge from the norm.[21]

---

[20] We have indicated that "there are some constitutional rights [such as assistance of counsel during trial] so basic to a fair trial that their infraction can never be treated as harmless error." *Chapman, supra,* at 23. The same may be true of prosecutorial delays of great length. Cf. *United States* v. *Chase,* 135 F. Supp. 230, 233 (D. C. N. D. Ill. 1955).

[21] For example, less than average delay might give rise to the probability of prejudice in cases where the evidence consists of the testimony of a few witnesses, as opposed to documentary evidence. See the discussion in 20 Stan. L. Rev., *supra,* n. 2, at 499–500.

Thus, it may be that an accused makes out a prima facie case of denial of speedy trial by showing that his prosecution was delayed beyond the point at which a probability of prejudice arose and that he was not responsible for the delay, and by alleging that the government might reasonably have avoided it. Arguably the burden should then shift to the government to establish, if possible, that the delay was necessary, by showing that the reason for it was of sufficient importance to justify the time lost.[22] General standards could be developed by determining, first, the weight to be given various grounds for delay and, then, how great a delay is justifiable for each. Some grounds, such as an attempt to gain an advantage over the accused, would have no value; legitimate reasons might have different weights, an attempt to locate a minor prosecution witness having less justificatory force than an attempt to locate a witness on whose testimony the prosecution hinges.

## V

These comments provide no definitive answers. I make them only to indicate that many—if not most—of the basic questions about the scope and context of the speedy-trial guarantee remain to be resolved. Arguments of some force can be made that the guarantee attaches as soon as the government decides to prosecute and has sufficient evidence for arrest or indictment; similar arguments exist that an accused does not lose his right to a speedy trial by silence or inaction, that governmental delay that might reasonably have been

---

[22] The government might appropriately bear this burden, since it, far more than the defendant, is likely to know why the delay took place. Courts below, however, have generally required the defendant to show that the delay was unnecessary, e. g., *Schlinsky* v. *United States*, 379 F. 2d 735, 737 (C. A. 1st Cir. 1967).

avoided is unjustifiable, and that prejudice ceases to be an issue in speedy-trial cases once the delay has been sufficiently long to raise a probability of substantial prejudice. Insofar as these arguments are meritorious, they suggest that the speedy-trial guarantee should receive a more hospitable interpretation than it has yet been accorded.