## Commonwealth v. Yorgey

*Lawrence A. Ruth,* for Commonwealth.
*Charles J. King,* Public Defender, for defendant.

HONEYMAN, J., June 23, 1971—Defendant was convicted by a jury on two counts of burglary and two counts of larceny stemming from events which occurred on August 29, 1967, in the Colonial Shopping Center, Eagleville, Montgomery County. Defendant's

fingerprints were "lifted" from the scene of the crime and later positively identified by the Federal Bureau of Investigation. A criminal complaint was sworn on September 28, 1967, against defendant but police were unable to locate him. Subsequently, the preliminary hearing and grand jury indictments took place in the absence of defendant whose whereabouts were unknown. It was not until early in 1969 that Montgomery County authorities learned the whereabouts of defendant. At this time, it was determined that he was incarcerated in a Virginia penitentiary for a conviction of a subsequent armed robbery. A detainer from Montgomery County was promptly lodged against him.

On April 14, 1969, defendant wrote to the Clerk of Courts in Montgomery County asking for a speedy trial. His letter was promptly replied to, erroneously advising him to obtain a petition pursuant to the Interstate Agreement on Detainers Act so that his request would be properly documented and processed. Virginia, the State of incarceration, was not at that time a signatory to this agreement. On August 30, 1969, the district attorney's office was advised by defendant that the information they requested was not available for him to produce; in addition, defendant requested the appointment of an attorney on his behalf in Pennsylvania. Before the Commonwealth could reply to this last letter, appellant filed a motion with the Pennsylvania Supreme Court asking for a recall of detainer(s), and dismissal of indictments: Supreme Court docket no. 11, miscell. docket No. 18. By order dated April 29, 1970 the Supreme Court remanded the petition to Montgomery County Common Pleas for disposition, and if the petition was denied, to then consider it as request "to be presently tried." This court also promptly appointed the Public Defender to represent defendant.

The district attorney initiated extradition proceedings and, under a Virginia statute (the precise nature of which this court is uncertain) an order was obtained for defendant's return to this State. He was returned to Pennsylvania on September 10, 1970, and his trial commenced on September 21, 1970. The motion to quash the indictments was heard before trial commenced and was denied. One of the bases for these post trial motions is the denial of that motion. Additionally, defendant alleges an insufficiency of evidence to support his conviction. After having heard oral argument and a review of the briefs, it is the opinion of the court en banc that defendant's motions should be dismissed.

Basically, we are concerned with the problem of determining whether petitioner did get the speedy trial which is guaranteed to him by the sixth amendment and made applicable to the States through the fourteenth amendment as delineated in Klopfer v. North Carolina, 386 U. S. 213 (1967). What complicates matters is that the State of incarceration, Virginia, was not a signatory to the Interstate Agreement on Detainers at the time defendant initiated his efforts to obtain a prompt trial on these indictments.

Prior to Smith v. Hooey, 393 U. S. 374 (1969), which obliged the prosecuting State to make prompt efforts to secure defendant's presence for trial once the detainer was lodged, Pennsylvania courts treated the requests for trial of prisoners in other jurisdictions which were not parties to the agreement on detainers as beyond their power to grant: Commonwealth v. Bressler, 22 D. & C. 2d 559, affirmed 194 Pa. Superior Ct. 208 (1960); Commonwealth v. Harmon, 21 D. & C. 2d 251 (1960). In a recent dissenting opinion, Judge Spaulding reviewed the state

of the law on speedy trials in Pennsylvania: Commonwealth v. Ditzler et al., 217 Pa. Superior Ct. 105, 108-10 (1970). He would apply the 180-day rule (Act of June 28, 1957, P. L. 428, sec. 1, 2 19 PS §881, 882) to all prisoners of other jurisdictions upon proper notice by the moving party; i.e. the party against whom the detainer is lodged. However, it would appear that the Bressler and Harmon cases are the controlling law on the question, since Virginia did not become a signatory to the act until 1970. From September 1969 until April 29, 1970, defendant's own affirmative action had removed the cause from this court to the Supreme Court of Pennsylvania. Next, defendant invokes Pennsylvania Rule of Criminal Procedure 316, effective January 1, 1965, which provides that if defendant is not brought to trial within a reasonable time after indictment, the court may order dismissal of the prosecution or grant other appropriate relief in the interests of justice. In this respect, the cases have followed a balancing rationale: Commonwealth v. Stukes, 435 Pa. 535, 257 A. 2d 828 (1969). The tenor of this rule clearly shows that prejudice to defendant would have to be established by reason of any delay and that the delay was not attributable to defendant. Defense counsel acknowledged there was no prejudice other than defendant's "anxiety and concern."

In Dickey v. Florida, 398 U. S. 30, 26 L. Ed. 2d 26 (1970), Mr. Justice Brennan, concurring with the majority, intimated that appellant must show actual prejudice until the point where there arises a probability of substantial prejudice, ". . . accused may then make out a prima facie case of denial of speedy trial by showing that his prosecution was delayed beyond the point at which a probability of prejudice arose and that he was not responsible for the delay,

and by alleging that the government might reasonably have avoided it."

These comments are all centered around prejudice at trial, not to one's life as a prisoner. While some mention is made as to the effect of an unpursued detainer on the life of a convict, this alone will not suffice, or, as Justice Brennan put it:

"These comments provide no definite answers. I make them only to indicate that many-if not most-of the basic questions about the scope and concept of the speedy-trial guarantee remain to be resolved."

Defendant also cites the Act of June 28, 1957, P. L. 428, sec. 1, 19 PS §881, as support for his position. This mandates trial within 180 days after notice by a defendant who is confined within Pennsylvania and clearly does not pertain to an out-of-State convict.

This is not the classic case of a sovereign State denying an incarcerated citizen his right to a speedy trial. Defendant committed twin burglaries in the Commonwealth and then fled; more than one year later he is located by the Commonwealth in prison in a sister State. Even if we were to follow the Ditzler dissent and apply the 180-day rule despite the non-joinder in the interstate agreement by Virginia, we do not believe that act mandates the dismissal of the indictments. A little over a month after the detainer was lodged against him, defendant requested this court for trial on these indictments. Under the erroneous belief of both the district attorney and defendant, the Interstate Agreement on Detainers procedure was attempted to be followed. When it was finally ascertained that the certification as to the status of defendant in Virginia could not be obtained (which is an express requirement of the Interstate Agreement on Detainers Act), our district attorney

finally received, by September 1969 the information informally that he needed to proceed further. However, before he could initiate any positive steps to seek defendant's return to Pennsylvania, defendant filed his petition with the Pennsylvania Supreme Court for dismissal of the indictments. While this petition was pending with the Supreme Court, this court was powerless to act. Certainly, the matter was processed promptly after the April 29, 1970, order of remand was received. In the ensuing five months, the district attorney completed the procedures, resulting in his return for trial and the actual trial itself, which concluded on September 22, 1970.

Neither the Pennsylvania nor interstate 180-day acts are applicable herein. Under Pennsylvania Rule of Criminal Procedure 316 this court sees nothing factually to move it to dismiss the indictments because of any unreasonable delay in bringing the matter to trial that is chargeable to the Commonwealth, particularly since there is a total absence of any genuine prejudice accruing to defendant. The indictments were approved by the grand jury on March 12, 1968, and the trial occurred 30 months later. More than 20 of those months defendant was either a fugitive or, by his own action, had effectively removed the cause from this court; four of the months were consumed in the efforts of defendant to bring himself under the interstate act, and three of the months elapsed during the district attorney's efforts to obtain defendant's return. Certainly, he has not been denied his constitutional right to a speedy trial under the facts and circumstances herein.

We have reviewed the trial transcript and find no support for defendant's assertion of an insufficiency of the evidence. It is manifestly clear that there was ample evidence to justify the conviction of this de-

fendant for both of the burglaries. No trial errors whatsoever are claimed in support of his motion for a new trial. In conclusion, the court en banc believes defendant received the speedy trial to which he was constitutionally entitled, the verdicts were supported by the evidence and the trial itself was free of prejudicial error.

## ORDER

And now, June 23, 1971, defendant's motion for a new trial and in arrest of judgment are refused; the district attorney is directed to initiate the necessary steps to produce defendant before the court to receive his sentence, and shall advise the trial judge promptly after his return so that a time and date for sentencing can be set.