**12**

410 A.2d 872

**COMMONWEALTH of Pennsylvania**

**v.**

**Richard BONAPARTE, Appellant.**

Superior Court of Pennsylvania.

Argued July 17, 1979.

Filed Sept. 21, 1979.

Petition for Allowance of Appeal Denied Jan. 14, 1980.

Steven Dickstein, Philadelphia, for appellant.

Marianne E. Cox, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before MONTGOMERY, O'BRIEN and HONEYMAN, JJ.*

* Justice HENRY X. O'BRIEN of the Supreme Court of Pennsylvania and Judge ROBERT W. HONEYMAN of the Court of Common Pleas of Montgomery County, Pennsylvania, are sitting by designation.

14

**O'BRIEN, Judge:**

Appellant, Richard Bonaparte, was convicted in a bench trial of voluntary manslaughter. Post-verdict motions were denied and appellant was sentenced to a prison term of three to ten years. This appeal followed.

Appellant first argues that he was denied his right to a speedy trial. The facts are as follows. On February 12, 1972, police were called to Tillman's Bar, in Philadelphia, where they found appellant lying in the doorway with a gunshot wound. Another man, John Tillman, was on the barroom floor, mortally wounded. An eyewitness stated that appellant had entered the bar, struggled with Tillman, then fired six shots into the victim's body. Appellant was arrested and charged with murder on that date. Trial commenced December 14, 1973. At the conclusion of the Commonwealth's case on that date, appellant requested a continuance, which was granted to January 2, 1974. Appellant failed to appear and the case continued to January 23, 1974. From that time until May, 1976, the case was continued for various reasons, including appellant's unavailability. Pursuant to a bench warrant, appellant was arrested in May, 1976. Trial was scheduled for June 3, 1976, but for various reasons chargeable to appellant, trial was not concluded until April 28, 1977.

Appellant's argument is broken down into two parts. He first argues he was denied a speedy trial because he was not tried until December 14, 1973, twenty-two months after he was arrested on February 12, 1972.[1]

In *Commonwealth v. Ware*, 459 Pa. 334, 346, 329 A.2d 258, 264 (1974), the court stated:

"Therefore, 'any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case . . . .' *Barker v. Wingo*, supra, [407 U.S. 514] at 522, 92 S.Ct. [2182] at 2188 [31 L.Ed.2d

1. Appellant's arrest predates the June 30, 1973 effective date of Pa.R.Crim.P. 1100. Appellant's speedy trial claim must thus be analyzed under *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 31 L.Ed.2d 101 (1972).

101]. We are required to 'engage in a difficult and sensitive balancing process,' id. at 533, 92 S.Ct. at 2193, 'in which the conduct of both the prosecution and the defendant are weighed.' Id. at 530, 92 S.Ct. at 2192 (footnote omitted). The factors we must consider in this balancing process are '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.' Id. (footnote omitted)."

It is within this framework that we must decide appellant's claim.

■ In the instant case, appellant cites no specific prejudice resulting from the twenty-two month delay. Further, prior to the December, 1973 commencement of appellant's trial, appellant never made demand he be afforded an immediate trial. Further, appellant made bail shortly after he was arrested. Here we have a twenty-two month delay between arrest and commencement of trial, the record failing to adequately explain the reasons for the delay. In *Commonwealth v. Ware, supra,* there was an unexcused and unexplained twenty-six month delay. As that court explained:

"First, there is nothing in the record indicating that appellant was prejudiced in his defense by the delay. He has suffered the inherent prejudice of long pretrial incarceration. But we are unable to conclude that he has suffered any impairment of his defense, which is the most serious type of prejudice 'because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past.'

"*Barker v. Wingo, supra,* at 532, 92 S.Ct. at 2193.

"There is here not the slightest hint that appellant's defense has been impaired by delay, no claims of dead, forgetful, or unavailable witnesses. Thus, this case differs markedly from those where specific impairment of the defense was a factor leading to a conclusion that the

right to a speedy trial has been violated: *Dickey v. Florida*, 398 U.S. 30, 38, 90 S.Ct. 1564, 1569, 26 L.Ed.2d 26 (1970) (deaths of two witnesses, unavailability of a witness, loss of police records); *Commonwealth v. Williams*, 457 Pa. 502, 507, 327 A.2d 15, 18 (1974) (loss of memory by a witness, death of a witness, and unavailability of two witnesses); *Commonwealth v. Hamilton*, 449 Pa. 297, 301, 297 A.2d 127, 129 (1972) (death of a witness); *Commonwealth v. Clark*, 443 Pa. 318, 331–332, 279 A.2d 41, 48–49 (1971) (defendant's loss of memory, unavailability of five witnesses, loss of physical evidence).

"More importantly, the record demonstrates that appellant did not want a speedy trial. It is true that he objected to the removal of the nol pros on the ground that trial at that time would violate his speedy trial right and twice moved to dismiss on the same ground, in July, 1972, and at trial. However, he never demanded an immediate trial; see *Barker v. Wingo*, supra, at 535, 92 S.Ct. at 2194. His counsel's consent to the Commonwealth's petition to nol pros contrasts sharply with the demands for a speedy trial made by the defendants in *Klopfer v. North Carolina* [386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1], supra; *Commonwealth v. Leaming* [442 Pa. 223, 275 A.2d 43], supra; and *Commonwealth v. Gant* [213 Pa.Super. 427, 249 A.2d 845], supra. We conclude, as did the Supreme Court in *Barker v. Wingo*, supra, that

" 'we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial.'

"407 U.S. at 536, 92 S.Ct. at 2195.

"In light of the absence of specific prejudice and appellant's failure to demand a speedy trial, we conclude that the balance of the relevant factors indicates appellant has not been denied his right to a speedy trial."

A balancing of the *Barker v. Wingo* standards in the instant case, as in *Ware*, requires a finding the delay prior to commencement of trial did not amount to a denial of appellant's right to a speedy trial.

■   Appellant further claims that his prompt trial right was denied because of a delay in the conclusion of his trial. Following the conclusion of the Commonwealth's case on December 14, 1973, appellant requested a continuance, which was granted, until January 2, 1974.  On that date, however, appellant failed to appear and a bench warrant was issued. When appellant appeared later that day with a sufficient explanation for his tardiness, the warrant was withdrawn and trial was rescheduled for January 23, 1974.  Between January 23, 1974 and May 28, 1974, numerous listings were continued for a variety of reasons, including the unavailability of either appellant or his attorney.  On May 28, 1974, another bench warrant was issued.  Yet another bench warrant was issued on December 5, 1974 by the Calendar Judge; at that time the case was placed in deferred indictment status where it remained until appellant was arrested in May of 1976 on an unrelated charge.

During the interim, appellant's original attorney died.  In the eleven months following appellant's May, 1976 arrest, numerous continuances were granted almost solely at appellant's behest, said continuances being occasioned by problems appellant was having in obtaining representation.  Appellant finally hired present counsel who was given time to prepare.

On April 28, 1977, appellant fired a motion to quash the indictment because of the various delays.  When said motion was denied, trial was again commenced.  Appellant presented no evidence and was found guilty of voluntary manslaughter.

Again, using the *Barker v. Wingo* analysis, we are unpersuaded appellant was denied his right to speedy trial because of the delay between December, 1973 and the trial's conclusion in April, 1977.  Except for the delay of two years between May, 1974 and May, 1976, all delay was occasioned by appellant.  Further, this two year delay cannot be classified as unexplained.  During this period, appellant had to know of the pendency of the proceedings; ·however, the record contains no indication appellant ever made any in-

quiries. Appellant also made no demand for immediate trial. Appellant failed to raise his speedy trial claim until he filed his petition to quash the indictment on April 28, 1977.

Appellant claims he was prejudiced by this delay as he was unable to locate various defense witnesses.[2] However, as one court has stated, "We will not assume that a defendant who voluntarily absents himself from the trial is greatly concerned with presenting an energetic defense." *Goitia v. United States*, 409 F.2d 524, 528 (1st Cir.), cert. denied, 397 U.S. 906, 90 S.Ct. 896, 25 L.Ed.2d 86 (1969). In balancing all the factors, we must hold appellant was not denied his right to a speedy trial.

Appellant finally alleges that he was denied effective assistance of counsel. Appellant's sole allegation to support this claim was that counsel who represented him at the trial's conclusion was not familiar with the December 14, 1973 proceedings at which the Commonwealth presented its evidence.

In *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604–05, 235 A.2d 349, 352–53 (1967), the court stated:

". . . [O]ur inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis." (Emphasis in original) (Footnote omitted.)

2. The prosecutor stipulated to the testimony of a witness who testified in appellant's behalf at the preliminary hearing, who had testified that an hour and one-half before the shooting, he saw the decedent forcefully remove money from appellant's pocket. The prosecutor also stipulated that decedent had been convicted of robbery in 1956.

To sustain an allegation of ineffective counsel, it must be shown that counsel either did or failed to do a specific act, neither of which had any reasonable basis for effectuating the client's interest. Instantly, appellant's only allegation is that counsel's unfamiliarity with the prior proceedings denied him "effective representation." This is insufficient to meet appellant's burden of proving counsel's ineffectiveness.

Appellant believes *People v. Manson*, 61 Cal.App.3d 102, 132 Cal.Rptr. 265 (1976) supports his conclusion that he was denied the effective assistance of counsel. In that case:

> "Ronald Hughes became trial counsel for [co-defendant Leslie] Van Houten on July 17, 1970, after commencement of trial and during the jury voir dire but before any jury was sworn or any evidence taken. He continued to actively represent her through the course of trial until Monday, November 30, 1970, when he failed to appear in court. By that time respondent and appellants had rested, but the trial court had not ruled on all submitted jury instructions and closing arguments had not commenced. When Hughes could not be located, Maxwell Keith was appointed for Van Houten as co-counsel . . . Hughes never returned to court." *Manson*, supra, at 197, 132 Cal.Rptr. at 323.

In *Manson*, credibility of many of the Commonwealth's witnesses was the prime issue in the trial. The court thus held that the newly appointed counsel would be unable to provide an effective summation where he had not seen any of the witnesses testifying. While *Manson* may well be good law on its facts, it simply does not provide support for appellant's argument in his factual setting.

In *Manson*, credibility of various witnesses was of paramount importance, especially in the case of a co-conspirator who testified after being granted immunity in return for her testimony. Further, at the time of counsel's disappearance in *Manson*, the trial was in its fifth month, eighty-eight witnesses having been called with a transcript in excess of eighteen thousand pages. Because of the complexity of the case, we can understand the insurmountable difficulties presented to substitute counsel.

The instant case is distinguishable from *Manson*. While credibility of witnesses is always at issue, credibility is not the crucial factor in this case. Several eyewitnesses testified they saw the shooting. The decedent, in fact, identified appellant as his assailant before he died. Further, the eyewitnesses' trial testimony was consistent with statements they gave police immediately after the homicide. Thus, rather than attempting to attack the credibility of the witnesses, counsel attempted to reduce the degree of guilt by showing that the decedent had robbed appellant. Furthermore, as opposed to *Manson*, the Commonwealth was able to put in its case in one day, using less than one hundred and twenty pages of trial transcript.

As we believe *Manson* is distinguishable, we must reject appellant's claim that he was denied effective assistance of counsel where he is unable to show any course of conduct by counsel which had no reasonable basis to effectuate appellant's interest.

Judgment of sentence affirmed.