# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### DECEMBER, 1997 SESSION



**FILED**

**February 9, 1998**

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | No. 02C01-9606-GS-00201 |
| | ) | |
| Appellee, | ) | |
| | ) | Hardin County |
| vs. | ) | |
| | ) | Honorable C. Creed McGinley, Judge |
| **ROGER DAVID BROWDER**, | ) | |
| | ) | |
| | ) | (DUI and Driving on a Revoked License) |
| Appellant. | ) | |

FOR THE APPELLANT:

RICHARD W. DeBERRY
Asst. District Public Defender
P.O. Box 663
Camden, TN

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

DEBORAH A. TULLIS
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

G. ROBERT RADFORD
District Attorney General
P.O. Box 686
Huntingdon, TN 38344

JOHN OVERTON
Assistant District Attorney General
P.O. Box 484
Savannah, TN 38372

OPINION FILED: _____

**AFFIRMED IN PART;
REVERSED AND DISMISSED IN PART**

CURWOOD WITT
JUDGE

**OPINION**

The defendant, Roger David Browder, appeals pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure from his judgment of conviction in the Circuit Court of Hardin County for driving under the influence and driving on a revoked license, Class A and Class B misdemeanors. The trial court sentenced him to concurrent sentences of eleven months and twenty-nine days in the county jail for driving under the influence and 180 days for driving on a revoked license. The court suspended all but sixty days of his sentence and ordered the defendant to serve the sentences consecutively to the sentence in an arson conviction.[1] In this appeal, the defendant contends that his convictions were obtained in violation of his right to a speedy trial and that the evidence is insufficient to sustain the convictions.

For the reasons discussed below, we affirm the defendant's conviction for driving under the influence of an intoxicant and reverse and dismiss his conviction for driving on a revoked license.

The defendant was arrested on June 24, 1995 and charged with driving under the influence of an intoxicant and driving while his license was revoked. An arrest warrant was issued on either June 26 or June 27.[2] Browder's parole for an earlier arson conviction was revoked as result of his arrest, and he was returned to the state penitentiary. On September 25, 1995, he filed a pro se motion for speedy trial. At an appearance in general sessions court on October 20, 1995, he waived his right to a preliminary hearing and the case was bound over to the grand jury. The trial court did not appoint counsel until November 2, 1995. On

---

[1]
The trial court revoked his driver's license for one year and assessed a thousand dollar fine in the DUI case.

[2]
The affidavit of complaint is dated June 27, 1995 but indicates that the warrant issued the previous day. The indictment states that the warrant was issued on June 27, 1995.

April 12, 1996, Browder filed a pro se motion to dismiss for failure to prosecute under Rule 48 of the Tennessee Rules of Criminal Procedure. After a brief hearing which included only argument by the attorneys, the trial court denied the motion on June 5, 1996. A week later, the defendant, once again acting pro se, filed an application for an extraordinary appeal.[3] This court denied his application on July 24, 1996. In July of 1996, the Hardin County Grand Jury charged Browder with one count of driving under the influence of an intoxicant and one count of driving while his license was canceled, suspended or revoked.[4]

Only one witness testified at the jury trial held on August 28, 1996. Officer Jim Davis of the Savannah Police Department testified that in the late afternoon of June 24, 1995, he was dispatched to the parking lot of a liquor store for a motorcycle accident and a possible drunk driver. When he arrived he found the motorcycle upright on its stand in the parking lot. The key was in the ignition, and the defendant was lying on the pavement partially under the motorcycle.[5] In response to Officer Davis's question, the defendant said, "I fell off my motorcycle." He explained that when he fell, he caught his pant leg on the gear shift lever. Browder complained that either his foot or his ankle was broken.[6] When he was unable to rise, the officer called for an ambulance. The officer testified that the

---

[3]

The record on appeal does not contain either Browder's application or this court's order denying that application. However, this court may take judicial notice of court records in an earlier proceeding of the same case. Delbridge v. State, 742 S.W.2d 266, 267 (Tenn. 1987).

[4]

The copy of the indictment contained in the record indicates only that Browder was indicted during the July, 1996 term. Although the technical record contains indications that Browder had been twice convicted for DUI prior to this occurrence, he was indicted for a first offense.

[5]

The officer said that the defendant "was partially underneath the motorcycle between -- like where the front wheel is, you have a down frame here that holds your engine. His legs were partially under there and he was attempting to get up."

[6]

Nothing in the record identifies the exact nature of the defendant's injury. At one point, defense counsel mentions that the defendant suffered a broken leg.

3

defendant's speech was slurred and that he had a tendency to ramble. He smelled strongly of alcohol. While waiting for the ambulance, Officer Davis checked the status of Browder's driver's license and found that it had been revoked. At trial, the officer could no longer remember which leg was injured nor could he recall who towed the motorcycle. He did not remember that he had followed the ambulance to the hospital although he presumed he had because he knew he requested a blood test and that one was taken. He did not make any attempt to verify the ownership of the motorcycle nor did he check to see if the vehicle were operable. He testified that there was only one helmet "involved" and that he didn't see anyone else "there." The defendant made no statement concerning his activities prior to the time he fell off the motorcycle. The laboratory technician did not testify, and no blood tests results were admitted into evidence. The state presented no documentary evidence showing that the defendant's driver's license had been revoked or the date on which the revocation occurred. On this evidence, the jury found the defendant guilty of driving under the influence and driving while his license was revoked.

Before considering the sufficiency of the evidence, we address the issue of whether the convictions were obtained in violation of the defendant's right to a speedy trial.

The United States and Tennessee Constitutions guarantee the criminally accused the right to a speedy trial. U.S. Const. amends. VI & XIV; Tenn. Const. art. 1, § 9; State v. Demetrius Dewayne Utley, --- S.W.2d ---, No. 01S091-9604-CR-00120, slip op. at 4 (Tenn., Nashville, Nov. 17, 1997); State v. Jefferson, 938 S.W.2d 1, 11 (Tenn. Crim. App. 1996). The right to a speedy trial is also statutory in Tennessee. Tenn. Code Ann. § 40-14-101 (1990). In addition, the Tennessee Rules of Criminal Procedure provide for the dismissal of an indictment, presentment, information, or criminal complaint, "[i]f there is unnecessary delay in presenting the charge to a grand jury against a defendant who has been held to answer to the trial court, or if there is unnecessary delay in bringing a defendant to

4

trial . . . ." Tenn. R. Crim. P. 48(b).

Neither the constitutional provisions, the statute nor the rule defines either the period of time in which the accused must either be brought to trial or the case dismissed or the precise point at which the clock starts to run. The United States Supreme Court has held that "no speedy trial rights arise until after formal accusation, either by arrest or by grand jury action." United States v. Marion, 404 U.S. 307, 320, 92 S. Ct. 455, 463 (1971). Recently, the Tennessee Supreme Court decided that the issuance of an arrest warrant, by itself, is not enough to trigger the protection of the Sixth Amendment right to a speedy trial. Utley, --- S.W.2d ---, slip op. at 7. Either a formal grand jury action or the actual restraints of an arrest are required. Id. at 7 (citations to other cases omitted).[7]

When an accused seeks the dismissal of a prosecution based upon the denial of the constitutional right to a speedy trial, the accused must establish a period of delay that is "presumptively prejudicial."[8] State v. Jefferson, 938 S.W.2d 1, 12 (Tenn. Crim. App. 1996) (citing Doggett v. United States, 505 U.S. 647, 651, 112 S. Ct. 2686, 2690 (1992)); Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972). The length of the delay is dependent upon the peculiar circumstances of each case, and the delay that can be tolerated for "an ordinary street crime" is generally much less than for a serious, complex felony charge. Barker, 407 U.S. at 530-531, 92 S. Ct. at 2193. A delay of one year or longer marks the point at which courts deem the delay unreasonable enough to trigger further

---

[7]

Presumably, although that it is not clear in Utley, an arrest alone will not trigger an accused's speedy trial rights. As we understand Utley, neither an arrest nor an arrest warrant is sufficient by itself. An arrest warrant must issue and the restraints of an arrest must be imposed before the speedy trial clock begins to tick.
See Utley, --- S.W.2d ---, slip op. at 9 (right triggered when accused was served with the warrant and arrested).

[8]

The term "presumptively prejudicial" does not imply that the defendant is automatically entitled to relief. It refers rather to delay sufficiently egregious to require analysis under the balancing test in Barker v. Wingo. Utley, --- S.W.2d ---, slip op. at 10.

5

inquiry. Utley, --- S.W.2d ---, slip op. at 10; Doggett, 505 U.S. at 652 n.1, 112 S. Ct. at 2691 n.1; see also State v. Ernest Vickers, III, No. 02C01-9609-CC-00313, slip op. at 7 (Tenn. Crim. App., Jackson, July 3, 1997), pet. perm. app. filed (Tenn. Sept. 3, 1997); State v. Terron Bledsoe, No. 02C01-9508-CC-00226, slip op. at 4 (Tenn. Crim. App., Jackson, July 3, 1997), pet. perm. app. filed (Tenn. Sept. 2, 1997).

If this threshold is crossed, a balancing test determines the merits of the speedy trial issue. In State v. Bishop, 493 S.W.2d 81, 83-85 (Tenn. 1973), our supreme court recognized and adopted the balancing test set forth in Barker v. Wingo in which four factors must be balanced. The factors are (1) the length of the delay, (2) the reasons for the delay, (3) the accused's assertion of the right to speedy trial, and (4) the prejudice resulting from the delay. Barker v. Wingo, 407 U.S. 514, 531, 92 S. Ct. 2182, 2192 (1972); Bishop, 493 S.W.2d at 83-84.

In this instance, Officer Davis arrested the defendant on June 24, 1995, and the issuance of an arrest warrant on June 26, 1995 triggered the defendant's right to a speedy trial. The defendant was tried, convicted and sentenced on August 28, 1996 after a delay of slightly more than fourteen months. We find that a fourteen-month delay in a simple DUI case is sufficient to require further analysis. We must, therefore, weigh the delay in the balance with the other three Barker factors.

The state has presented no valid explanation for the delay. The record indicates that the defendant waived his right to a preliminary hearing when he appeared in general sessions court on October 20, 1995, and that the case was bound over to the grand jury.[9] In April, 1996, the defendant filed a pro se motion to

---

[9] The defendant had filed a motion for speedy trial on September 25, 1995, approximately one month after his parole was revoked and three months after his arrest. At the time of his appearance in general sessions court, the defendant had no attorney representing him. The public defender's office was appointed on November 2, 1995.

6

dismiss. The state did not take the case to the grand jury until after the trial court denied the motion on June 5, 1996. The indictment was issued during the July term. The state now argues that the defendant is responsible for most of the delay in bringing the case to trial because he sent the case to the grand jury and because he filed a Rule 10 appeal to the trial court's denial of his motion to dismiss. We disagree.

Although, it is true that the defendant could have waived the grand jury requirement, there is nothing in the record to indicate that the defendant knew of the possibility of waiver or, if he knew, that he understood the ramifications of such a waiver. The defendant was not represented by counsel until after his first court appearance. Moreover, the state could have taken the case to the grand jury at anytime after the initial appearance in sessions court. The facts of the case required little investigation, and the arresting officer was certainly available to testify. The state, however, declined to act until after the trial judge asked the prosecutor if the case were ready in June of the following year. We cannot say that, on these facts, any of the delay is chargeable to the defendant merely because the case was bound over to the grand jury.

Nor can we see how the defendant's decision to file a Rule 10 appeal of the trial court's denial of the motion to dismiss delayed the trial by even a single day.[10] When the defense filed its petition for an extraordinary appeal on June 13,

---

[10]

In United States v. Loud Hawk, 474 U.S. 303, 106 S. Ct. 648 (1986), the United States Supreme court found that delays occasioned by appellate review of interlocutory appeals were subject to the Barker four-part balancing test:

> The Barker test furnishes the flexibility to take account of the competing concerns of orderly appellate review on the one hand and a speedy trial on the other. We therefore adopt this functional test to determine the extent to which appellate time consumed in review of pretrial motions should weigh towards a defendant's speedy trial claim.

474 U.S. at 315, 106 S. Ct. at 655. However, we need not apply the test in this instance because our review indicates that the defendant's extraordinary appeal resulted in no delay.

1996, the state had not yet taken the case to the grand jury. This court denied the defendant's application on July 24, 1996. The copy of the indictment in the record does not disclose the date on which it was issued; however, the caption indicates that the issuance occurred during the July, 1996 term. Clearly, the trial could not be held prior to the indictment. Even if the defendant had not filed his application for appeal, nothing indicates that the trial could have been scheduled sooner than August 28, 1996.

The crucial question in determining the legitimacy of delay caused by government action or inaction is whether the delay was necessary. State v. Kolb, 755 S.W.2d 472, 474 (Tenn. Crim. App. 1988). Nothing in the record indicates that the delay in this instance was necessary. In fact, at the hearing on the motion to dismiss, the assistant district attorney candidly told the trial court:

> He [Browder] was brought to General Sessions Court after he indicated he wanted to come down and dispose of his charge. He bound the matter over to the Grand Jury. And I got the impression Mr. Browder was more interested in riding up and down the road than he was in handling his case. So rather than spending time and the deputy's time taking him back and forth, we just chose to wait on him.

(emphasis added).

In essence, the prosecutor admitted that the government made a conscious choice to delay. An intentional delay to gain tactical advantage over the defense or to harass the defendant is clearly improper. Barker v. Wingo, 407 U.S. 514, 532 n.32, 92 S. Ct. 2182, 2193 n. 32 (1972); United States v. Marion, 404 U.S. 307, 325, 92 S. Ct. 455, 466 (1971); State v. Baker, 614 S.W.2d 352, 354 (Tenn. 1981); State v. Terron Bledsoe, No. 02C01-9508-CC-00226, slip op. at 4 (Tenn. Crim. App., Jackson, July 3, 1997), pet. perm. app. filed (Tenn. Sept. 2, 1997). In State v. Bishop, 493 S.W.2d 81 (Tenn. 1973), the Tennessee Supreme Court quoted with approval the concurring opinion of Mr. Justice Brennan in Dickey v.

8

Florida, 398 U.S. 30, 90 S. Ct. 1564 (1970), in which Justice Brennan declared that "a deliberate attempt by the government to use delay to harm the accused, or governmental delay that is 'purposeful or oppressive,' is unjustifiable. . . ." Bishop, 493 S.W.2d at 84. (quoting from Dickey v. Florida, 398 U.S. at 51, 90 S. Ct. at 1575 (Brennan, J., concurring)). A delay deliberately designed to hamper the defense or harm the accused should be weighed heavily against the government and in favor of the defendant. Barker, 407 U.S. at 531, 92 S. Ct. at 2193; State v. Phillip Branson, No. 03C01-9305-CR-00148, slip op. at 9 (Tenn. Crim. App., Knoxville, Dec. 9, 1994).

The third factor, the defendant's assertion of his right to a speedy trial, must also be weighed in favor of the defendant. In some instances, the evidence may show that a defendant did not want a speedy trial, but in this case, the defendant unequivocally asserted his right within three months of his arrest. When six months passed without any action, the defendant moved to dismiss the charges. The fact that this motion was filed by the defendant himself even though the public defender had been appointed to represent him is further proof that this defendant was seeking a quick resolution to these charges.

Although no single factor is determinative in all cases, the most crucial inquiry is whether the delay has prejudiced the defendant. State v. Wood, 924 S.W.2d 342, 348 (Tenn. 1996) (citations to other cases omitted); State v. Turnbill, 640 S.W.2d 40, 43 (Tenn. Crim. App. 1982). Prejudice to a defendant is not confined to the possible prejudice to his defense. Moore v. Arizona, 414 U.S. 25, 26, 94 S. Ct. 188, 190 (1973). Courts should assess prejudice in light of the interests which the speedy trial right was designed to protect. Barker, 407 U.S. at 533, 92 S. Ct. at 2193. The Barker Court identified three such interests:

> 1. To prevent oppressive pretrial incarceration.
>
> 2. To minimize anxiety and concern of the

9

accused.

> 3. To limit the possibility that the defense will
>
> be impaired.

Id. Of the interests that the right to a speedy trial is designed to protect, the most serious is the last because a defendant's inability to prepare his case calls into question the fairness of the entire process. Barker, 407 U.S. at 532, 92 S. Ct. at 2193. Excessive delay compromises the reliability of a trial in ways that neither party can prove or even identify. Doggett v. United States, 505 U.S. 647, 655, 112 S. Ct. 2686, 2693 (1992); Wood, 924 S.W.2d at 347.

The defendant, in this case, does not contend that he suffered undue anxiety or concern or that his ability to mount a defense was impaired. He bases his claim of prejudice on the first factor and alleges that the pending charges denied him the opportunity to take part in various rehabilitative programs that would have otherwise been available to him while he was serving his sentence for arson. Even though the accused is incarcerated for reasons unrelated to his speedy trial claim, no court should overlook the possible impact that pending charges might have upon the prospects for parole and meaningful rehabilitation. Moore v. Arizona, 414 U.S. at 27, 94 S. Ct. at 190; State v. Wood, 924 S.W.2d 342, 348 (Tenn. 1996).[11] At the hearing on the motion to dismiss, defense counsel stated that the defendant had been excluded from various rehabilitative programs because of the pending charges. The defendant's brief contains a similar statement. However, arguments of counsel whether oral or in a brief are not evidence. The defendant did not testify, and the record contains no information regarding the specific programs in which he could not participate.

We recognize that our consideration of prejudice is not necessarily

---

[11]

See also State v. Wallace, 648 S.W.2d 264, 268 (Tenn. Crim. App. 1980) (delay resulted in prejudice in form of jeopardizing the defendant's work release status)(citing State v. Wanda Lou Baker, slip. op. (Tenn. Crim. App., Knoxville, Nov. 8, 1979); Blackwell v. State, 546 S.W.2d 828, 830 (Tenn. Crim. App. 1976) (detainer had no effect on appellant's prison status or privileges).

limited to specifically demonstrable evidence. Doggett v. U.S., 505 U.S. 647, 655, 112 S. Ct. 2686, 2692 (1992). However, even though affirmative proof of particularized prejudice is not essential to every speedy trial claim, State v. Wood, 924 S.W.2d at 348; State v. Jefferson, 938 S.W.2d 1, 14 (Tenn. Crim. App. 1996); State v. Kolb, 755 S.W.2d 472, 475 (Tenn. Crim. App. 1988), we find it difficult to evaluate the degree to which the delay prejudiced the defendant absent some specific information about the deprivations which he incurred.

Of the three interests identified in Barker, the most serious is the possibility that the defense may be impaired. Barker v. Wingo, 407 U.S. 514, 533, 92 S. Ct. 2182, 2193 (1972). It is also the one most difficult to prove because the loss of accurate recall and the disappearance of vital documentary evidence may be impossible to demonstrate. Id. Excessive delay may presumptively compromise the reliability of a trial in ways that neither party can prove or even identify. Doggett v. United States, 505 U.S. 647, 655, 112 S. Ct. 2686, 2693 (1992). The greater the delay, the more difficult it becomes for a defendant to show particularized prejudice. Id.

However, delay is a double-edged sword. The state bears the burden of proving its case beyond a reasonable doubt, and the passage of time may make it difficult or impossible for the government to carry its burden. United States v. Loud Hawk, 474 U.S. 302, 315, 106 S. Ct. 648, 656 (Tenn. 1986). Fading memories and vanished evidence may be as damaging to the state as to the defendant. In this case, the defendant has not alleged that any defense witnesses were unavailable or that any exculpatory evidence was lost. The record, however, amply demonstrates the difficulty that delay creates. The only witness who testified could not recall many of the pertinent facts. No blood test results were offered. As we discuss below, the dearth of facts has seriously jeopardized the state's case. After carefully reviewing the record, we find that the fourth Barker factor tends to weigh somewhat in favor of the state.

11

This case well illustrates the difficulty of balancing the four <u>Barker</u> factors. No single factor is determinative; rather, the factors are interrelated and must be considered together with all the relevant circumstances. <u>Barker</u>, 407 U.S. at 533, 92 S. Ct. at 2193. The delay in this case is directly attributable to the state's decision to "just let him [the defendant] wait." The defendant asserted and pursued his right to a speedy trial. Both of these factors weigh heavily in the defendant's favor. On the other hand, a delay of fourteen months, although certainly sufficient to trigger the analysis under <u>Barker</u> and <u>Bishop</u>, is not especially egregious, and the last factor we weigh slightly in favor of the state. We consider this to be a very close case. Although two factors weigh strongly in the defendant's favor, the length of the delay and the absence of proof of prejudice tend to counterbalance these deficiencies. Without some proof of the kinds of deprivations the defendant experienced, we cannot say that the defendant's right to a speedy trial was violated. See <u>State v. James H. Masters</u>, No. 03C01-9503-CR-00092, slip op. at 6 (Tenn. Crim. App., Knoxville, July 19, 1995).

We now consider whether the evidence in the record is sufficient to sustain the defendant's convictions for driving under the influence and driving on a revoked license.

The standards for reviewing the sufficiency of the evidence are well-established. Since a jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, a convicted defendant has the burden of demonstrating on appeal that the evidence is insufficient. <u>State v, Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982). In determining that sufficiency, this court does not reweigh or reevaluate the evidence. <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. <u>State v. Harris</u>, 839 S.W.2d 54, 75 (Tenn. 1992). It is the appellate court's duty to affirm the conviction if the evidence,

12

viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offenses beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 317, 99 2781, 2789; State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); Tenn. R. App. P. 13(e).

A criminal offense may be established exclusively by circumstantial evidence. Duchac v. State, 505 S.W.2d 237 (Tenn. 1973); State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995); State v. Lequire, 634 S.W.2d 608 (Tenn. Crim. App. 1987). However, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." State v. Crawford, 225 Tenn. 478, 470 S.W.2d 610 (1971); State v. Jones, 901 S.W.2d at 396. In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Crawford, 470 S.W.2d at 613; State v. McAfee, 737 S.W.2d 304, 305 (Tenn. Crim. App. 1987).

With these standards in mind, we find that the record contains sufficient proof to sustain the defendant's conviction for driving under the influence of an intoxicant; however, the evidence is insufficient to prove beyond a reasonable doubt the elements of driving on a revoked license.

According to Tennessee law,

It is unlawful for any person or persons to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state of Tennessee, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while under the influence of any intoxicant . . .

Tenn. Code Ann. § 55-10-401(a)(1993). The defendant does not contend that he was not intoxicated. He argues that the proof fails to establish that he either drove

13

or was in physical control of the motorcycle.

We agree that there is no evidence in the record to indicate that the defendant actually drove the vehicle while he was intoxicated. The officer found the motorcycle on its stand in a public parking lot near a liquor store during the late afternoon. The keys were in the ignition, and the defendant was lying injured next to and partially underneath the vehicle. The state argues that one can infer from the facts that the defendant drove the motorcycle to the parking lot and that he was intoxicated when he did so. We disagree. Although the defendant told the officer that "I fell off my motorcycle," there is no evidence, circumstantial or otherwise, that indicates how long the motorcycle had been in the parking lot, who drove it there, or whether the driver was intoxicated when he arrived. Although, the officer testified that only one helmet was "involved," and that no one else was "around," the record does not indicate that the defendant was wearing or had possession of the helmet or whether there were people in the liquor store or on the street. This facts in this case are far different from those in State v. Lawrence, 849 S.W.2d 761 (Tenn. 1993), in which the supreme court noted that the evidence would have been sufficient for the jury to conclude that the defendant had driven his truck to the place where it was found. Id. at 766. In Lawrence, the defendant was found asleep in his truck at night. The vehicle was blocking a narrow gravel road. The defendant was sitting behind the driver's seat and the keys were in his pocket. Id. Unlike Lawrence, any number of reasonable inferences may be drawn from the facts of this case,[12] and the evidence is legally insufficient to support the conclusion that the defendant drove the motorcycle to the parking lot while he was intoxicated.

However, actually driving a vehicle is only one way a person may be convicted of driving under the influence. A person may be convicted of DUI if the state proves beyond a reasonable doubt that an intoxicated person was in physical

_____

[12]
For example, the defendant could have driven the motorcycle to the lot several hours earlier, purchased liquor at the liquor store, and drank it somewhere nearby.

14

control of the vehicle. Tenn. Code Ann. § 55-10-401(a) (1993).

Tennessee uses a totality of the circumstances test to evaluate whether the accused was in physical control of a vehicle within the meaning of the statute. State v. Lawrence, 849 S.W.2d 761, 765 (Tenn. 1993). In considering the extent of an accused's activity necessary to constitute physical control, the trier of fact must take into account all of the circumstances, including, for example, the location of the defendant in relation to the vehicle, the whereabouts of the ignition key, whether the motor was running, the defendant's ability, but for his intoxication, to operate the vehicle, and the extent to which the vehicle itself is capable of moving under its own power. Lawrence, 849 S.W.2d at 765.

In this case, the officer testified that he found the defendant lying on the ground with one leg partially under the motorcycle. The defendant told the officer that when he fell off the bike, he caught his pants leg on the gear shift lever and hurt his leg. The key was in the ignition. The engine was not running, and the motorcycle was towed away without any attempt to discover whether it would run.[13] When the defendant could not get to his feet and complained of a broken bone, the officer called an ambulance. The only proof of ownership of the vehicle is the defendant's own statement that he fell off "his motorcycle." It is clear that, when the officer arrived, the injured defendant did not have the present physical ability regardless of his intoxication to operate the vehicle. State v. Lawrence, 849 S.W.2d at 765. He could not have driven the motorcycle away because of his injured leg. However, the key was in the ignition and he apparently had been in the seat before falling and becoming injured. It was only his intoxication and bad luck that prevented him from driving away at that time. We find that the evidence, while not overwhelming, is sufficient for a rational juror to conclude that, just prior to falling,

_____

[13]

The defendant correctly argues that nothing in the record demonstrates that the motorcycle was in an operable condition. However, the key was in the ignition and the defendant was seated on a machine he claimed to own. From those facts, a rational juror could infer that the motorcycle was operable.

15

the defendant was in physical control of the motorcycle while he was under the influence of an intoxicant.

As to the defendant's conviction for driving while his license was revoked, we find that the evidence does not exclude every other reasonable theory except that of guilt. See State v. Raymond Carroll, No. 02C01-9308-CR-00179, slip op. at 5 (Tenn. Crim. App., Jackson, Sept. 27, 1995). Tennessee Code Annotated section 55-50-504 provides that "[a] person who drives a motor vehicle on any public highway of this state at a time when the person's privilege to do so is canceled, suspended or revoked commits a Class B misdemeanor." Tenn. Code Ann. § 55-50-504(a)(1) (emphasis added). The statute requires that the state prove that the accused drove the vehicle on a public highway. The legislature could have made provision for driving in any public place or for being in physical control of the vehicle but chose to limit the crime to those who actually drive on a public road.

As discussed above, there is no proof, circumstantial or otherwise, from which a jury could infer that the defendant drove the motorcycle on a public road. The officer testified that he did not see the defendant actually driving the motorcycle. Although the motorcycle obviously was not manufactured in that parking lot, the sole fact that the defendant said that he fell off his bike in a parking lot is not sufficient to prove beyond a reasonable doubt that he is guilty of driving while his license was revoked as defined by section 55-50-504. See Raymond Carroll, slip op. at 6. The facts and circumstances are not so strong and cogent as to exclude every other reasonable hypothesis save guilt. State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995). Therefore, we find that the evidence in the record is legally insufficient to support a conviction for driving under a revoked license pursuant to Tennessee Code Annotated section 55-50-504.

We affirm the defendant's conviction for driving under the influence of an intoxicant. His conviction for driving while his license was revoked is reversed

16

and dismissed.

_____
CURWOOD WITT, Judge

_____
JOE B. JONES, Presiding Judge

_____
JERRY L. SMITH, Judge

17